Roger ZACZEK

v.

FAUQUIER COUNTY, VA., et al.

Civ. A. No. 3:90CV00499.

United States District Court,
E.D. Virginia,
Richmond Division.

May 20, 1991.

Roger Zaczek, pro se.

Robert Sinclair Corish, Slenker, Brandt, Jennings & Johnston, Merrifield, Va., Linwood Theodore Wells, Office of Atty. Gen., Warren H. Britt, James Walter Hopper, Parvin, Wilson, Barnett, & Hopper, Lynne Jones Blain, Browder & Russell, Richmond, Va., John David McGavin, Lewis, Trichilo & Bancroft, P.C., Fairfax, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Roger Zaczek, a Virginia State prisoner proceeding *pro se*, submitted this complaint under 42 U.S.C. § 1983. Plaintiff alleged, *inter alia*, that he was falsely arrested, falsely imprisoned, and maliciously prosecuted for an incident that occurred on May 31, 1988. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1343(a)(3).

By Order entered March 14, 1991, the Court ruled on at least ten (10) motions filed by the plaintiff.[1] Eight days later, on March 22, 1991, plaintiff filed a document entitled "Motion to amend or alter judgment". It challenges the validity of the March 14 Order and was served within ten (10) days of it. Accordingly, the Court construes it as a Rule 59(e) motion. *See Dove v. CODESCO*, 569 F.2d 807, 809 (4th Cir.1978).

In addition, the plaintiff also filed the following documents:

1. Plaintiff's third motion for summary judgment against Deputy Moshier filed on March 28, 1991;

2. Plaintiff's opposition to defendant Moshier's motion for sanctions and plaintiff's motion for sanctions against Deputy Moshier filed April 1, 1991; and

3. Application for interlocutory appeal or notice of interlocutory appeal filed April 3, 1991.

Also pending is a motion for summary judgment filed by defendant Hunsaker to which the plaintiff responded on April 8, 1991.[2] Finally, on May 6, 1991, plaintiff filed a document entitled "Rule 78 Motion ..." in which he demands an immediate decision on his Rule 59(e) motion. The motions are ripe for disposition.

■ The first issue which must be addressed is plaintiff's application for or notice of an interlocutory appeal. Plaintiff seeks to appeal an Order entered March 22, 1991 in which the Court declined to consider certain motions filed by him.[3] A notice of appeal filed prior to the disposition of a Rule 59(e) motion is void and has no effect. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 60–61, 103 S.Ct. 400, 403–04, 74 L.Ed.2d 225 (1982); Fed.R. App.P. 4(a)(4)(iii). Moreover, plaintiff's application for an interlocutory appeal is baseless. The March 22 Order was not a final determination of the plaintiff's claims against defendant Moshier. *Cf. Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). It certainly did not involve a controlling question of law as to which there is substantial ground for difference of opinion. *See* 28 U.S.C. § 1292(b). In fact, the Court did not even consider the merits of the subject claims because the plaintiff improperly filed his motions. Accordingly, plaintiff's application for an interlocutory appeal will be DENIED.

Next, plaintiff seeks to alter or amend the March 14, 1991 Order. He alleges that

---

1. By Order entered January 4, 1991, the plaintiff was initially advised that his motion practice was improper. *See* Memorandum p. 50–53. Zaczek was warned, for the *second* time, that he would be sanctioned if he continued to file repetitive, successive or supplemental motions. *See* Memorandum entered March 14, 1991 at p. 16–17.

2. The Court did not advise the plaintiff of his right to respond to defendant Hunsaker's mo-

tion. However, in view of plaintiff's prompt response and his familiarity with legal procedures such Order is not now necessary.

3. On March 8 and March 11, 1991, the plaintiff filed two additional motions for summary judgment against Defendant Moshier. By Order entered March 22, 1991, the Court declined to entertain them because they were successive and in violation of the January 4, 1991 Order.

the Court erroneously denied his motion to amend the complaint to add a claim against defendant Moshier.[4] *See* Memorandum entered March 14, 1991 p. 13–14. The Court has already carefully considered plaintiff's "double jeopardy claim". *Id.* It is frivolous and has no basis in law or fact.[5] The instant motion fails to persuade the Court that the March 14 Order is erroneous. Accordingly, plaintiff's Rule 59(e) motion will be DENIED. In view of this decision, the document entitled plaintiff's "Rule 78 Motion" will be DENIED as MOOT.

The third issue which must be addressed is yet another motion filed by the plaintiff. On March 28, 1991, plaintiff filed a document entitled "Plaintiff's third motion for summary judgment as to defendant Deputy Moshier....". This motion clearly violates the specific terms of the Orders entered January 4, 1991 and March 14, 1991.[6] It is also but one example of plaintiff's abusive litigation practices. The Court will, therefore, sanction the plaintiff for his "contumacious conduct". *See Reizakis v. Loy,* 490 F.2d 1132, 1135 (4th Cir.1974). For the reasons set forth below, the complaint will be DISMISSED WITH PREJUDICE. The Court recognizes that the sanction is harsh. As a result, a detailed discussion of the facts of this case and reasons for the sanction will follow. However, the plaintiff has persistently ignored and refused to comply with the Orders of this Court. He is solely responsible for his abusive misconduct; and there is no other sanction which is appropriate under the circumstances of this case.

4. Plaintiff's amended claim is, essentially, that Deputy Moshier violated his right to be free from successive prosecution for the same offense when the plaintiff was tried and convicted for abduction.

5. Defendant Moshier is a police officer. He did not have the authority to *prosecute* the plaintiff for abduction or any other crime. Moreover, the abduction charges resulted from a grand jury hearing. Moshier's only involvement with those charges was as a witness. It should also be noted that plaintiff's convictions for abduction have never been overturned.

6. Moreover, by Order entered March 22, 1991, the Court specifically advised plaintiff that his motions against Defendant Moshier were suc-

## Statement of Facts

The instant complaint was filed by Order entered September 5, 1990. Since that date, the plaintiff has flooded the Court with unnecessary motions. In less than four months, plaintiff filed thirty-seven (37) motions, supplements, objections and replies.[7] On January 4, 1991, the Court ruled on all pending motions. It also instructed and cautioned the plaintiff, as well as the defendants, to comply with the Local Rules and the Federal Rules of Civil Procedure. *See* Memorandum entered January 4, 1991 at p. 50–53.[8] Additionally, the plaintiff was warned that the Court would not tolerate his constant barrage of unnecessary and repetitive motions. *Id.* at 52–53.

Thereafter, despite the Court's admonition, the plaintiff filed approximately ten more motions.[9] By Order entered March 14, 1991, the Court ruled on all pending motions including a demand for summary judgment against defendant Moshier filed by the plaintiff on January 22, 1991. The plaintiff was also warned, for the *second* time, that his successive motions would not be tolerated. The pertinent portion of that Order stated:

> The Court recognizes that the plaintiff is a *pro se* litigant. As a result, the Court will presume that he did not deliberately ignore, but misunderstood the January 4, 1991 admonition against unnecessary, supplemental motions. However, plaintiff is again ADVISED that the Court will not tolerate successive *or* supple-

cessive and improper. The plaintiff, therefore, deliberately disregarded that Order when he filed the March 28 motion.

7. This figure does not include the plaintiff's oppositions to the dispositive motions filed by the defendants.

8. The Court also recited the pertinent portion of Fed.R.Civ.P. 11.

9. The second series of motions contained at least three Rule 59(e) motions, four motions to amend, two motions under Rule 11, a motion for summary judgment against defendant Moshier and a motion to reply to Moshier's opposition to the plaintiff's motion.

mental motions.[10] Should plaintiff continue to file such documents, appropriate sanctions will be imposed. Further, plaintiff is ADVISED that should he again disregard or violate this Court's specific orders, the action may be dismissed. Fed.R.Civ.P. 41(b).

Memorandum entered March 14, 1991 at p. 16–17.

Shortly before the March 14 Order was issued, plaintiff filed two more motions for summary judgment against defendant Moshier. The first was submitted on March 8, 1991.[11] The second was filed on March 11, 1991.[12] By Order entered March 22, 1991, the Court refused to entertain these motions for two reasons. First, they did not comply with the Local Rules of this Court. More importantly, however, the motions were successive and clearly violated the specific terms of the January 4, 1991 Order. Thus, plaintiff was notified for the *third* time that his persistent motions were improper.

Nevertheless, six days later, on March 28, 1991 the plaintiff disregarded the clear and specific Orders of this Court by filing another motion for summary judgment against defendant Moshier.[13] This last motion is but one example of a pattern of abusive litigation which began the moment the plaintiff filed this action. A lengthy discussion to further detail his abuses is not necessary. The docket speaks for itself.[14] In recognition of plaintiff's *pro se* status, the Court repeatedly advised, warned and admonished him to refrain from filing repetitious and successive mo-

tions. In response, the plaintiff ignored and disobeyed the Court.

A review of the history of this case and relevant precedent reveals that it is now appropriate to sanction the plaintiff. To reach this conclusion, the Court has considered four issues and answered each affirmatively. First, the Court will review whether or not federal courts possess the authority to dismiss cases with prejudice *sua sponte.* Next, it will discuss whether *pro se* litigants are subject to such sanctions. The Court will then analyze the circumstances which must exist before the dismissal sanction may be imposed. Finally, the Court will determine whether or not dismissal is appropriate in this case.

### I.

■ There is no doubt that federal courts possess the inherent authority to dismiss cases with prejudice *sua sponte. See Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734, *reh'g denied,* 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112 (1962); *White v. Raymark Industries, Inc.,* 783 F.2d 1175 (4th Cir.1986) (inherent authority to dismiss to control docket recognized and approved). In fact, district courts have invoked the sanction on numerous occasions, albeit with great caution. *See White,* 783 F.2d at 1177; *Eash v. Riggins Trucking, Inc.,* 757 F.2d 557, 561–62 (3rd Cir.1985) (en banc) (authority is so well entrenched, it is often presumed but not defined).

**10.** Since January 14, 1991, plaintiff has filed *five* (5) motions to amend, clarify or particularize his claims. Additionally, prior to that date, plaintiff filed several similar motions. (footnote contained in original).

**11.** This motion was so voluminous that it was filed by the plaintiff in a red, hard cover binder.

**12.** In this motion, the plaintiff sought summary judgment against defendant Moshier for claims raised in plaintiff's motion to amend. This motion was filed even though the Court had not yet ruled on plaintiff's motion to amend.

**13.** The plaintiff filed approximately ten motions against or involving defendant Moshier between September 5, 1990 and April 8, 1991.

**14.** In just eight (8) months, the plaintiff has filed approximately fifty (50) motions. This figure does not include his responses to the dispositive motions filed by the defendants. The vast majority of the motions were repetitive and unnecessary. For example, the plaintiff has attempted to amend or particularize his claims at least seven times. He filed numerous Rule 59(e) motions. And, ironically, the plaintiff has moved for Rule 11 sanctions against various defendants and their counsel four times. In stark contrast to the plaintiff's conduct, the seventeen defendants to this action have together filed only twelve (12) motions.

The United States Supreme Court described the origin of and purpose for the dismissal sanction in *Link v. Wabash R. Co.*, 370 U.S. 626, 629–36, 82 S.Ct. 1386, 1388–92, 8 L.Ed.2d 734 (1962). In *Link*, the Supreme Court affirmed a District Court's decision to dismiss a case with prejudice because plaintiff's counsel failed to appear at a pretrial hearing and failed to promptly prosecute the complaint.[15] The Court explained that the authority "to dismiss *sua sponte* for lack of prosecution" is an " 'inherent power' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases". *Id.* at 630–36, 82 S.Ct. at 1388–92 (citations omitted). It also held that the authority to dismiss is not limited by Federal Rule Civil Procedure 41(b), which generally applies to involuntary dismissals.[16] Nor is the authority dependent upon notice to the plaintiff, or the existence of a Local Rule. *Id.* 632–34, 82 S.Ct. at 1389–91.

However, the dismissal sanction is not limited to those cases in which a plaintiff fails to promptly prosecute his complaint. A variety of sanctions, including dismissal, may be imposed upon a party or an attorney who fails or refuses to obey a court order. The United States Supreme Court examined this authority more recently in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–66, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980). In that case, the United States District Court for the Western District of Louisiana dismissed a complaint and ordered the plaintiff's attorneys to pay $17,000 to the defendant for attorney's fees and costs.[17] In making this determination, the District Court found that the plaintiffs and their attorneys violated several discovery orders, improvidently enlarged the action and engaged in uncooperative behavior.

The Supreme Court affirmed the dismissal.[18] It held that federal courts possess the inherent authority to "levy sanctions in

**15.** The District Court had scheduled a pretrial conference. On the morning of the conference, plaintiff's counsel telephoned chambers to say that he would not be present because he was writing a brief for the Indiana Supreme Court. He did not receive permission for an adjournment and the complaint was dismissed. The failure to appear was but one example of a history of delay. *Link,* 370 U.S. at 628 n. 2, 82 S.Ct. at 1387 n. 2.

**16.** In fact, the Federal Rules of Civil Procedure provide further support for the court's authority to dismiss a complaint for failure to obey a court order. The relevant portion of Rule 41(b) states:

> For failure of the plaintiff to prosecute or *comply* with these rules, or *any order of the court,* a defendant may move for dismissal of the action or any claim against the defendant.

Fed.R.Civ.P. 41(b) (1991) (emphasis added). The *Link* Court specifically noted that the permissive language of the Rule does not abrogate a court's authority to act on its own initiative. 370 U.S. at 630, 82 S.Ct. at 1388. Thus, a court need not await a motion from a defendant before it employs the dismissal sanction. The United States Court of Appeals for the Fourth Circuit implicitly applied this interpretation of Rule 41(b) on at least two occasions. *See Hillig v. Commissioner,* 916 F.2d 171, 173–74 (4th Cir. 1990) (authority to dismiss acknowledged although plaintiff was not sufficiently culpable in this case); *Chandler Leasing Corp. v. Lopez,* 669 F.2d 919, 920 (4th Cir.1982) (test required to

dismiss under Rule 41(b) applied to a *sua sponte* order).

In addition, the sanctions contained in Rule 16(f) have been used to punish lawyers and parties who unreasonably delay or interfere with the expeditious management of a case. *Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir.1985), *citing, In re Baker,* 744 F.2d 1438, 1441 (10th Cir.1984). Rule 16(f) states:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).

Fed.R.Civ.P. 16(f) (1991).

**17.** The Order resulted in part from a motion filed by the defendant under Fed.R.Civ.P. 37(b).

**18.** The fee award was remanded for further proceedings. Specifically, the District Court was instructed to determine whether or not the plaintiff's attorneys acted in bad faith. The Court held that a finding of conduct constituting or tantamount to bad faith must precede any sanction under the court's inherent powers. *Roadway,* 447 U.S. at 766–67, 100 S.Ct. at 2464–65.

response to abusive litigation practices". *Id.* at 765, 100 S.Ct. at 2463, *citing, Link v. Wabash R. Co.,* 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962). This inherent authority was broadly defined as that which is " 'necessary to the exercise of all others' ". *Id.* 447 U.S. at 764, 100 S.Ct. at 2463, *citing, United States v. Hudson,* 7 Cranch 32, 34, 3 L.Ed. 259 (1812).[19] Consequently, there is no doubt that federal judges possess the inherent authority to dismiss a complaint to sanction litigants or attorneys who violate court orders, abuse the litigation process, or otherwise conduct the litigation in bad faith. *Roadway,* 447 U.S. at 764–66, 100 S.Ct. at 2463–64; *Link,* 370 U.S. at 629–34, 82 S.Ct. at 1388–91; *Hillig v. Commissioner,* 916 F.2d 171, 173–74 (4th Cir.1990) (involuntary dismissal requires some finding of deliberate misconduct); *White,* 783 F.2d at 1177.

Further, there are strong policies which support the dismissal sanction which are directly applicable to this case. First, the sanction provides the control necessary to achieve the orderly and expeditious disposition of cases. *Link,* 370 U.S. at 630–31, 82 S.Ct. at 1388–89. The authority also promotes the "administration of justice and dignity of the courts ..." *Roadway,* 447 U.S. at 764, 100 S.Ct. at 2463 (quoting *Cooke v. United States,* 267 U.S. 517, 539, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925)). Quite obviously, the sanction protects those litigants who are direct victims of abusive litigation.

Increasingly, however, the dismissal sanction has been invoked to protect other litigants before a court. In *Eash v. Riggins Trucking, Inc.,* the Third Circuit observed that federal courts can no longer indulge misconduct because of the dramatic rise in litigation. 757 F.2d 557, 565 (3rd Cir.1985). This Court is no exception. As early as 1974, Circuit Judge Butzner noted that "[t]he District Court for the Eastern District of Virginia is exceptionally busy, and the demands on the time of its judges and jurors are great". *Reizakis v. Loy,* 490 F.2d 1132, 1136 (4th Cir.1974). As a result, it is now necessary to deter or limit those few litigants who so overtax and abuse limited judicial resources, that they prevent others from obtaining relief and prompt access to the courts. *See Eash,* 757 F.2d at 565.[20] As will be more fully discussed below, there is no doubt that all of these policies would be served if the dismissal sanction is applied to this case.

## II.

The second issue requires only brief discussion. *Pro se* litigants are not immune from any sanction by virtue of their status alone. *See e.g. Ballard v. Carlson,* 882 F.2d 93 (4th Cir.1989), *cert. denied sub nom., Ballard v. Volunteers of America,* — U.S. —, 110 S.Ct. 1145, 107 L.Ed.2d 1049 (1990) (*pro se* complaint dismissed with prejudice for failure to obey court order despite warning). In fact, the authority to punish attorneys arises from the

**19.** The United States Court of Appeals for the Fourth Circuit has also defined the inherent authority to dismiss in terms of its practical necessity. *See White v. Raymark Industries, Inc.,* 783 F.2d 1175, 1177 (4th Cir.1986) (federal courts have the inherent power to control and protect the administration of court proceedings). The Fourth Circuit distinguished that authority from the more prominent and popular contempt sanction when it adopted the analysis and conclusion of *Eash v. Riggins Trucking, Inc.,* 757 F.2d 557 (3rd Cir.1985) (en banc). *White,* 783 F.2d at 1177. In *Eash,* the Third Circuit noted that the term inherent authority has been applied in three general fashions. *Id.* at 562–64. First, there is a narrow range of authority, pursuant to Article III, grounded in the concept of separation of powers. Second, certain inherent powers arise from the nature of courts and are required to enable the court to

administer justice. The contempt power has its roots in this definition of inherent authority. *Id.* at 562–63. The third form of inherent authority, which the Court applies to this case, is that power "necessary in the practical sense of being useful". *Id.* at 563. It is a tool which federal judges may employ to process litigation to a just and equitable result and to aid them in the performance of their duties. *Id.*

**20.** The *Eash* Court also quoted the pertinent observations of Chief Justice Burger. He warned that "a small handful [of litigants] must not be permitted to abuse the system and preempt its time and machinery for purposes not intended, thus delaying and denying access to courts to others in need of the courts limited resources". *Eash* 757 F.2d at 565 (quoting Burger, Abuses of Discovery, Trial (Sept. 1984).

judiciary's inherent power to sanction litigants for misconduct. *Roadway*, 447 U.S. at 766, 100 S.Ct. at 2464. Moreover, it is well acknowledged that litigants may be sanctioned for abusive litigation even if they are represented by counsel. *Alyeska Pipeline Service Co. v. Wilderness Soc.*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975) (courts have inherent authority to tax counsel fees against a party who litigates in bad faith); *Link*, 370 U.S. at 628–29, 82 S.Ct. at 1387–88 (case dismissed because of attorney's misconduct); *Hillig*, 916 F.2d at 173–74 (propriety of sanction against litigant depends upon his culpability).

Likewise, in *White v. Raymark Industries, Inc.* the Fourth Circuit held that "[t]here is no distinction between attorney and litigant abuses of the judicial process when applying the inherent power of the federal courts to penalize those responsible for the wrongful conduct". 783 F.2d 1175, 1177 (4th Cir.1986). There is, therefore, no doubt that *pro se* litigants are subject to any and all appropriate sanctions for their misconduct.[21]

### III.

The next question is what factors must be present before a federal court may invoke its inherent authority to sanction a *pro se* plaintiff by dismissing a complaint with prejudice *sua sponte.* The Court initially notes that there is no standard which is directly applicable to the facts of this case. However, the Fourth Circuit has approved a four factor test for those cases in which a complaint is involuntarily dismissed for failure to prosecute under Fed. R.Civ.P. 41(b). These cases routinely call for review of (i) the degree of personal responsibility of the plaintiff; (ii) the amount of prejudice caused the defendant; (iii) the existence of a history of deliberately proceeding in a dilatory fashion, and (iv) the existence of a sanction less drastic than

dismissal. *Chandler*, 669 F.2d at 920; *Reizakis*, 490 F.2d at 1135; *see also Hillig*, 916 F.2d at 174.

Those cases and one of the criteria are clearly distinguishable from the unique circumstances of this case. Here, a sanction is necessary because the plaintiff repeatedly failed to comply with the Orders of this Court; and because he abused the litigation process. As a result, it is necessary to employ a new standard of review. *See e.g. White*, 783 F.2d at 1177–78 (district court discretion used to fashion an appropriate sanction); *Ballard*, 882 F.2d at 95–96 (four prong test is not a rigid standard—propriety of dismissal depends upon the circumstances of the case). The new test will incorporate the existing standards, but will reflect the type of misconduct which this plaintiff has engaged in.

The Court preliminarily notes that dismissal is a severe sanction which must be exercised with restraint, caution and discretion. *Roadway*, 447 U.S. at 764, 100 S.Ct. at 2463; *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir.1978) (dismissal is a harsh sanction which should not be invoked lightly). The policy of the federal courts is to decide each case on the merits if possible. It is therefore obvious that the plaintiff must engage in some deliberate misconduct before the sanction is applied. Thus, to dismiss a complaint, a federal court must first find that the plaintiff willfully disobeyed a court order or acted in bad faith. *See Roadway*, 447 U.S. at 766, 100 S.Ct. at 2464 (citation omitted); *see also Hillig*, 916 F.2d at 174–75 (dismissal under Rule 37 requires callous disregard for the authority of the district court); *Reizakis*, 490 F.2d at 1135 (dismissal is permitted when a plaintiff engages in "contumacious" conduct). A court may find bad faith in the actions that led to the lawsuit or the conduct of the litigation. *Roadway*, 447 U.S. at 766, 100 S.Ct. at 2464, *citing, Hall v. Cole*, 412 U.S.

---

21. It is also well settled that federal courts may enjoin *pro se* litigants from filing frivolous or repetitious complaints under 28 U.S.C. § 1915(a). *Graham v. Riddle*, 554 F.2d 133 (4th Cir.1977). The *Graham* decision is distinguishable from this case because the sanction rests

upon the discretionary authority arising from § 1915(a). However, the policy supporting that decision is directly applicable to this case. That is, *pro se* litigants who engage in vexatious or abusive legal proceedings are not shielded from immunity.

1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973). In doing so, a court will necessarily determine the degree to which the plaintiff is personally responsible for the misconduct.

■ Further, in general, *pro se* litigants are unfamiliar with the litigation process.[22] As a result, their pleadings are liberally construed. *See Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (*pro se* complaints are held to less stringent standards); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The Court must also advise them of the procedures necessary to properly prosecute their actions under certain circumstances. *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975) (courts must advise *pro se* plaintiff's of procedures required to respond to motion for summary judgment).

■ In some cases, therefore, a court should advise a *pro se* plaintiff of the consequences of his misconduct before a sanction is imposed. In *Ballard v. Carlson,* the United States District Court for the District of Maryland warned the plaintiff before it ultimately dismissed a *pro se* complaint with prejudice under Fed.R.Civ.P. 41(b). The sanction was imposed because the plaintiff failed to comply with a court order.[23] The Fourth Circuit affirmed the dismissal. 882 F.2d 93 (4th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1145, 107 L.Ed.2d 1049 (1990). It held that the explicit warning was a critical factor and alone sufficient to justify the dismissal. *Id.* at 95–96.

■ Similarly, the Court finds that a warning is a second factor which must be present before a *pro se* complaint may be dismissed for failure to comply with a court order. This prerequisite is not only appropriate but necessary in view of the severity of the sanction and the limited experience that most *pro se* litigants have with the judicial process. Additionally, this criteria comports with the fundamental requirements of due process in that a litigant will have fair notice of the consequences of his actions. *See Link,* 370 U.S. at 632, 82 S.Ct. at 1389 (the adequacy of notice and hearing turns on the party's knowledge of the consequences of his conduct).

Third, courts must examine the amount of prejudice which the plaintiff's actions have caused. This element may be reviewed from two different vantages. First, a court may assess the amount of prejudice which a defendant has sustained as a result of delay or the costs associated with defending frivolous pleadings and motions. Alternatively, in view of the dramatic increase in litigation, courts may also review the amount of prejudice which the other litigants before the court may face if the plaintiff's misconduct continues. *See Eash,* 757 F.2d at 565. Such a requirement ensures that district courts will have the tools required to efficiently administer cases and to protect the increasing number of individuals who seek access to the courts. *Id.*

Finally, federal courts must consider the existence of an effective sanction which is less drastic than dismissal. However, courts must do more than decide that a less severe sanction exists, for there is no doubt that such will always be the case. The relevant inquiry is whether or not a lesser sanction is *feasible* and *appropriate* in view of the history of each case and the plaintiff's conduct.

To summarize, the Court will analyze four factors to determine whether or not it is appropriate to invoke the Court's inherent authority to dismiss the instant com-

---

**22.** The instant plaintiff is an obvious exception to this general rule. He has advised the Court on several occasions, that he was employed as a paralegal for a private firm. Moreover, the motions filed in this case clearly demonstrate his proclivity for legal research and experience with the litigation process. Finally, he has competently prosecuted several other actions in this Court.

**23.** The plaintiff was directed to amend and particularize his complaint within thirty days. He was warned that failure to comply with the order might result in dismissal of the action. The defendant filed a motion to dismiss when the plaintiff failed to comply with the order. Thereafter, plaintiff filed a request for an extension of time. The Court found that plaintiff's stated reasons did not justify an extension and dismissed the case with prejudice.

plaint with prejudice *sua sponte.* The factors to be examined are: (1) the bad faith or deliberate misconduct of the plaintiff; (2) the notice which the plaintiff received concerning the consequences of his continued misconduct; (3) the amount of prejudice caused by the plaintiff; and (4) the existence of an effective sanction which is less drastic. In view of these criteria, there is no doubt that the instant complaint should be dismissed.

## IV.

■ The plaintiff in this case has clearly abused the judicial process and is personally responsible for his misconduct. As noted, in eight months, he filed over fifty motions. Each time the Court issued a decision, the plaintiff filed another stream of repetitive motions and objections. Zaczek filed approximately ten motions against one defendant alone including several motions for summary judgment. Simply stated, the plaintiff conducted this litigation in bad faith.

More importantly, Zaczek willfully disregarded the authority of this Court and ignored several admonitions. By Order entered January 4, 1991, the plaintiff was warned that he would not be permitted to file successive or supplemental motions. *See* Memorandum entered January 4, 1991 at p. 50–53. The plaintiff responded to that Order by filing ten more motions. By Order entered March 14, 1991, the plaintiff was again warned that the Court would not tolerate unnecessary, successive and repetitive motions. *See* Memorandum entered March 14, 1991 at p. 10–17. Shortly before that Order was issued, plaintiff filed two more motions. The Court refused to entertain those motions because they were successive. *See* March 22, 1991 Order. Thus, plaintiff was also warned, by example, of the type of motions which violated the January 4 Order. Nevertheless, six days later, Zaczek filed yet another motion for summary judgment. And, he has continued to file additional motions since that date.[24] The docket alone is sufficient to demonstrate that the plaintiff has conducted this litigation in bad faith. Moreover, there is no doubt that his conduct was deliberate and that he voluntarily chose to ignore the Orders of this Court. As a *pro se* litigant, plaintiff bears complete personal responsibility for his actions in contrast to a client who might be unaware of the actions of his attorney. Zaczek is also familiar with legal research and the litigation process.[25] In addition, the plaintiff was repeatedly admonished and had, therefore, ample notice of the consequences of his continued misconduct.

There is no doubt that the defendants in this case have been prejudiced by the plaintiff's misconduct. Their attorneys were required to review, research and respond to an incessant barrage of repetitive motions. This obviously caused unnecessary expenses for costs and attorneys fees.[26] Further, the manner in which the plaintiff prosecuted his claims frequently confused the issues before the Court making it very difficult for the defendants to properly defend the action. *See* Defendant's motion for enlargement of time of November 19, 1990. In addition, although the issues are not complicated, this case has required an inordinate amount of time and judicial resources. More so than any other *pro se* action. Should the plaintiff be permitted to continue to unnecessarily consume limited judicial resources, the other litigants before this Court, including those proceeding *pro se,* will be severely prejudiced.[27]

Finally, under the circumstances of this case, there is no other sanction which

24. Ironically on May 6, 1991, the plaintiff filed a motion in which he demands an immediate decision on a pending Rule 59(e) motion.

25. *See* n. 22 *supra.*

26. It should be noted that there were many motions filed by the plaintiff against the Milliken defendants. The documents submitted by the plaintiff indicate that he has also sued these

defendants in state court for similar claims. These defendants were, therefore, not only the victims of the plaintiff's crime, but also victims of his vexatious civil litigation.

27. In 1990, this Court received and initially processed approximately 135 *pro se* prisoner cases each month. From those cases, approximately 30 per month were assigned to this Division.

would be effective or appropriate. Plaintiff Zaczek is a Virginia State prisoner proceeding *pro se.* He is unemployed and has few assets. *See* Plaintiff's motion for *in forma pauperis* status. A monetary sanction would do little to curb his conduct and is not feasible.

The Court has considered dismissing only those claims against defendant Moshier because this defendant has been the object of the plaintiff's most flagrant abuses. However, the history of this case demonstrates that the plaintiff has no regard for the authority of this Court and would not, therefore, comply with a lesser sanction. His most recent submissions reveal that he clearly does not intend to discontinue his abusive motion practice. *See* Plaintiff's motion for interlocutory appeal; *see also* plaintiff's Rule 78 motion. Finally, the plaintiff was warned that the complaint could be dismissed if he did not obey the Orders of this Court. It is, therefore, appropriate to apply that sanction. Accordingly, for all of the reasons stated above, the complaint will be DISMISSED WITH PREJUDICE. All pending motions are DENIED as MOOT.

An appropriate Order shall issue.

### ORDER

In accordance with the accompanying Memorandum, it is ORDERED that:

1. Plaintiff's application for an interlocutory appeal is DENIED;

2. Plaintiff's Rule 59(e) motion to amend or alter the March 14, 1991 Order is DENIED;

3. Plaintiff's "Rule 78 motion" is DENIED as MOOT;

4. The complaint is DISMISSED WITH PREJUDICE;

5. All other pending motions are DENIED as MOOT; and

6. This case stands CLOSED.

Should plaintiff desire to appeal, written notice of appeal must be filed with the Clerk of the Court within thirty (30) days of the date of entry hereof.

Let the Clerk of the Court send a copy of this Order and the Memorandum filed herewith to the plaintiff and counsel for the defendants.

And it is so ORDERED.