**John McGLOTHLIN, Plaintiff,**

v.

**Edward MURRAY, et al., Defendants.**

**No. Civ.A. 93–0981–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

April 30, 1999.

---

19.   *See supra* note 6.

John Patton McGlothlin, Bland, VA, pro se.

Pamela Anne Sargent, Office of the Attorney General, Richmond, VA, for Edward Murray, Various John Does, Various Jane Does, Ron Angelone, Warden Thompson, Assist. Warden Hollar, Mary D. Campbell, T. Stewart, Assist. Warden Lawhorn, defendants.

Rosalie V. Pemberton, Timberlake, Smith, Thomas & Moses, P.C., Staunton, VA, for Chaplain Roepke, defendant.

Chaplain Roepke, Staunton, VA, defendant pro se.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

This matter is before the court on remand from the Court of Appeals for the Fourth Circuit. The Fourth Circuit affirmed this court's order denying relief on the merits of Plaintiff John McGlothlin's complaint. However, the Fourth Circuit vacated this court's order granting attorneys' fees to the Defendants and remanded for application of the twelve factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). Plaintiff's subsequent petition for certiorari was denied by the Supreme Court of the United States. After reviewing the twelve *Johnson* factors, and other concerns relevant to cases such as this one, the court

finds it appropriate to reduce the amount of the attorneys' fees award to $900.

## I.

Plaintiff, who was an inmate at Dillwyn Correctional Center at the time he brought this lawsuit, has proceeded pro se throughout this litigation, including all appeals. His complaint pursuant to 42 U.S.C. § 1983 claims numerous violations of his constitutional rights, specifically his rights under the First and Fourteenth Amendments. Plaintiff alleged that prison officials and the prison chaplain discriminated against him because of his Islamic faith. After an evidentiary hearing, the United States Magistrate Judge recommended denying relief, and this court adopted that recommendation, overruling plaintiff's objections.

Thereafter, the defendants filed motions for attorneys' fees, which were granted based on the recommendation of the Magistrate Judge. Defendants sought, and were granted, a total of $28,719.25 in attorneys' fees. The court also adopted the Magistrate Judge's recommendations to deny defendants' motions to grant Rule 11 monetary sanctions and to revoke plaintiff's *in forma pauperis* (IFP) status. Plaintiff never challenged the reasonableness of the amount of the costs and fees calculated by defendants. Instead, plaintiff claimed that an attorneys' fees award in any amount whatsoever would be inappropriate because his claims were not groundless.

## II.

The Fourth Circuit has adopted the twelve factors in *Johnson* as the guidelines to used by lower courts in determining a reasonable attorney's fee. *See Trimper v. City of Norfolk*, 58 F.3d 68, 73 (4th Cir. 1995). The twelve Johnson factors are: (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal service; (4) the

preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases.

58 F.3d at 73.

■ Two additions should be made to this list when considering an attorney's fees award against a pro se plaintiff in a case such as this one: (1) the importance of ensuring access to the courts for plaintiffs with civil rights claims, and (2) the financial means of the plaintiff. The *Trimper* court noted, recalling the decision in *Daly v. Hill*, 790 F.2d 1071 (4th Cir. 1986), that in determining a reasonable attorney's fee under 42 U.S.C. § 1988, the court must also be guided by the underlying purpose of that section, which is "to ensure effective access to the judicial process for persons with civil rights grievances without simultaneously producing windfalls to the attorneys." *Trimper*, 58 F.3d at 73. In addition, courts within the Fourth Circuit have also considered the plaintiff's financial position to be a relevant factor in determining a reasonable attorney's fees award against a plaintiff. *See, e.g., Introcaso v. Cunningham*, 857 F.2d 965, 968 (4th Cir.1988), *Zaczek v. Fauquier County*, 764 F.Supp. 1071 (E.D.Va.1991), *aff'd by* 16 F.3d 414 (4th Cir.1993).

After adding these two factors to the twelve in *Johnson*, the court will undertake to address each of these factors in turn.

First, the plaintiff significantly increased the time and labor required to litigate this case by his endless flood of pleadings and repeated changes in specifying the allega-

tions underlying his claims. The litigation began in December 1993 and has lasted to the present, with the Supreme Court handing down its decision denying *certiorari* in March 1999. The defendants and their counsel labored throughout that period, including through a two-day evidentiary hearing in November 1996. Although the attorney for the state defendants was familiar with the plaintiff and therefore able to decipher his numerous pro se filings fairly readily, the sheer number of those filings multiplied the amount of time she had to spend reviewing and responding to documents. The Bill of Costs and Fees submitted by the attorney for the state defendants appears to this court to reasonably calculate the time and labor required to perform the essential tasks in this litigation, typically allotting five minutes to review orders, letters from plaintiff, and the like. Similarly, the attorney for the chaplain has reasonably calculated the time required to litigate this case in filing her motion for attorney's fees.

Plaintiff's claims did not present novel or difficult questions of law. However, plaintiff's methods of litigating, as a pro se plaintiff, and the difficulties in investigating the factual allegations he made to support his claims, forced defendants to interview witnesses and present testimony only to discover that most of those factual allegations were without any basis in reality. However, the questions presented were recognized early on as meritless by the attorney for the state defendants and were therefore fairly simple to attack. Similarly, the chaplain's clear-cut defense that he was not a state actor and therefore not liable under § 1983 surfaced fairly early in the litigation.

Defendants' counsel were able to perform the legal service to their clients without a high degree of skill because plaintiff's claims eventually collapsed on their own weight. After the evidentiary hearing finally brought to light the reality behind plaintiff's claims, the Magistrate Judge noted that there was an utter lack of evidence to support plaintiff's case. Ferreting out the substance behind the smokescreen of plaintiff's flood of pleadings required relatively little skill, but an inordinate amount of time.

Preclusion of other employment opportunities is not a particularly relevant factor in this case. The Assistant Attorney General who represented the state defendants does not choose to handle particular cases, but is engaged on a regular basis by the state to handle whatever matters arise. This litigation diverted her time and attention from other matters she might have handled, but her employment opportunities remain constant due to her position. The chaplain proceeded pro se for most of the time-frame of this litigation. His counsel devoted a total of 38.5 hours to this case, only minimally precluding her from taking on other employment opportunities.

Both counsel have calculated fees using a reasonable hourly rate that comports with the customary fee for such services. Counsel for the state defendants has been awarded fees in the past by federal and state courts at the same rate at which she calculated her fees in this case, $150.00 per hour. Counsel for the chaplain calculated her fees at a slightly lower rate of $125.00 per hour, which is also a reasonable and customary rate for work on this type of case.

Neither counsel calculated her fees on a contingency basis, so the sixth factor is not particularly relevant here. The seventh factor, whether there were any time limitations imposed by the client or circumstances, also does not apply in this case. The eighth factor, the amount in controversy and the result obtained, suggests comparing those two variables to arrive at a measure of the degree of success, but this comparison is meaningless unless the plaintiff is the prevailing party.

Each of the attorneys for defendants in this case possessed adequate experience, reputation and ability to litigate this case in a professional manner. Counsel for the

state defendants is a former law clerk to the Chief Judge for the U.S. District Court for the Northern District of West Virginia, has practiced for 19 years, and specializes in civil rights cases such as this one. Counsel for the chaplain is duly licensed to practice law in the Commonwealth of Virginia, and practices with a reputable law firm in Staunton, Virginia.

Undesirability of the case, the tenth factor, also has more significance when plaintiff prevails than when defendants prevail, as in this case. Rarely, if ever, is it desirable to be the defendant in a civil rights suit. As far as state defendants are concerned, the Assistant Attorney General never considered whether or not representing her clients would be desirable; her role in this case is part and parcel of her job. Counsel for the chaplain, who made an appearance mid-way through the litigation, had the benefit of collaborating with counsel for her client's co-defendants, which probably lessened the undesirability of the representation.

The eleventh factor also seems to have an awkward fit for the Assistant Attorney General who represented state defendants: the nature and length of the attorney's professional relationship with the client. The state defendants' counsel has represented these defendants and others similarly situated throughout her employment in the Attorney General's Office and has an ongoing, regular relationship with state actors as defendants. The attorney for the chaplain, on the other hand, had a very short professional relationship with her client, entering an appearance after significant work had already been accomplished in ferreting out the truth behind plaintiff's allegations.

■ The twelfth factor poses the greatest difficulty for this court. This court has perused the case law in the Fourth Circuit, and cases out of the district courts in Virginia, and finds very few cases in which sizable attorney's fees awards were granted to defendants in § 1983 actions brought by pro se, indigent, prison inmates such as this plaintiff. One reason for this is the Supreme Court's caution that "attorney's fees should rarely be awarded" against pro se inmates due to their understandable ignorance of subtle legal and factual issues. *See Hughes v. Rowe*, 449 U.S. 5, 15, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). The degree to which a pro se inmate's § 1983 action must be frivolous, unreasonable, or without foundation in order for attorney's fees to be assessed against the inmate appears to be greater than that required to award fees against other plaintiffs. *See, e.g., Autry v. Woods*, 86 F.3d 1148, 1996 WL 276315 (4th Cir.1996) (per curiam) (attorney's fees award upheld where inmate had previously litigated exactly the same claims against the same defendants in state court), *Vester v. Murray*, 878 F.2d 380, 1989 WL 68870 (4th Cir.1989) (award of attorney's fees against pro se inmate proceeding pursuant to § 1983 was vacated because although plaintiff's case was dismissed prior to trial, that is not a sufficient basis for awarding fees when plaintiff is proceeding pro se).

Even in cases where the necessary degree of frivolousness or meritlessness was found, thereby warranting an attorney's fees award against a pro se prisoner plaintiff, the amount of that fee rarely reaches the magnitude sought by defendants here. *See, e.g., Hughes* (although ultimately vacated by the Supreme Court, the amount of attorney's fees awarded by the district court originally was only $400), *Zaczek* (although it would have been appropriate to award attorney's fees, district court effectively reduced amount of award to zero due to plaintiff's financial condition).

■ The court's purpose in imposing the fee award in this case was to send a message to plaintiff that he would not be allowed to continue to bring lawsuits such as this with impunity. The backdrop of plaintiff's previous litigation experience signified a key consideration in the Magistrate Judge's determination that a fee award against plaintiff was warranted. In

this case, and apparently in past actions brought by plaintiff, the legal claims brought by plaintiff appeared meritorious, alleging violations of rights which prisoners are entitled to enjoy. However, when plaintiff may have, or should have, known that the true factual circumstances underlying those claims would eventually reveal the lawsuits to have very little merit, characterizing the suits as frivolous seems fairly accurate. Frivolousness should be weighed by measuring not only the viability of the legal claims, but the ability of the facts to support those claims.[1] The Magistrate Judge, as well as the defendants, particularly the state defendants, were understandably frustrated because of the flood of pleadings by plaintiff, not only in this case, but in several other lawsuits brought by this plaintiff. However, the court notes in retrospect that it may have placed undue emphasis on the plaintiff's litigation history in assessing fees against him in this particular case. "The mere fact that a prisoner has filed a multiplicity of suits in the past is not an adequate basis for assessing fees against him." *Vester*, 878 F.2d 380, 1989 WL 68870 at *2.

▮ After considering the twelve factors, to the extent they pertain to this case, the ultimate determination of a reasonable amount for attorneys' fees in this case devolves upon the court's discretion. The additional factors which this court feels it must consider after analyzing the twelve *Johnson* criteria suggest that the court should reduce the amount of the award in this case. First, the court is concerned that awarding attorney's fees against a pro se inmate such as this plaintiff might discourage other inmates who have viable civil rights claims from attempting to access the judicial process to remedy actual violations of their rights. *See Trimper*, 58 F.3d at 73. Second, the court is concerned that the prospect of this plaintiff ever actually paying the amount calculated by defendants is so remote that to assess that amount against this plaintiff would simply be folly. *See Introcaso v. Cunningham*, 857 F.2d 965, 968 (4th Cir. 1988) (court's decision to award only ten percent of the possible assessment for attorney's fees was upheld due to plaintiff's financial position), *Zaczek*, 764 F.Supp. at 1080 (after finding that plaintiff's misconduct had prejudiced defendants and caused unnecessary expenses, court nonetheless found that "a monetary sanction would do little to curb his conduct and is not feasible" because pro se inmate plaintiff was unemployed and had few assets). Therefore, the amount of the award must reflect the reality of plaintiff's limited assets and ability to pay, while still making him realize that frivolous litigation has its costs. The court finds that awarding attorney's fees in the amount of $750 to the state defendants and $150 to the chaplain's counsel appropriately balances these concerns.

### III.

Having reviewed the twelve *Johnson* factors and considering the additional concerns arising in § 1983 cases brought pro se by inmates such as plaintiff, the court finds that a reasonable attorneys' fee in this case is $900, with $750 to be paid by plaintiff toward the attorney's fees of Pamela Anne Sargent of the Office of the Attorney General and $150 to be paid toward the attorney's fees of Rosalie Pemberton, counsel for Chaplain Roepke. Although the calculations by counsel of their attorney's fees appear to be accurate and

---

1. For example, one of the outward manifestations plaintiff cited in his complaint to show that Christian inmates were treated more favorably than Muslim inmates was the relative size and state of the bulletin boards for the Christian and Muslim groups. What plaintiff did not reveal, but probably knew from the beginning, was that prison funds were not utilized to obtain or maintain those bulletin boards. Rather, inmates engaged in fund raising and relied on donations from persons outside the prison facility to pay for the cost of bulletin boards as well as many other services of a religious nature which were provided to inmates.

reasonable in amount, the liability of this plaintiff for attorney's fees has been significantly reduced out of concern that such a large fee would not have a real impact on plaintiff because its payment is so unlikely and out of concern that such a large award against a pro se prisoner would discourage inmates with viable claims from seeking access to the courts.

An appropriate Order shall this day issue.