**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DONNA J. ZORNES; SHIRLEY D'AMICO,
Plaintiffs-Appellants,

v.                                                                                    No. 97-2337

SPECIALTY INDUSTRIES, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-96-244-S)

Argued: May 7, 1998

Decided: December 21, 1998

Before WILKINSON, Chief Judge, and WILLIAMS and
TRAXLER, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Williams wrote the majority
opinion, in which Chief Judge Wilkinson concurred. Judge Traxler
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Joseph Anthony Schwartz, III, SCHWARTZ, BOYD &
METZ, P.A., Baltimore, Maryland, for Appellants. Douglas William
Desmarais, SMITH & DOWNEY, P.A., Baltimore, Maryland, for
Appellee. **ON BRIEF:** Richard L. Hackman, SMITH & DOWNEY,
P.A., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WILLIAMS, Circuit Judge:

Donna J. Zornes and Shirley D'Amico (Appellants) appeal from the district court's dismissal of their consolidated cases with prejudice under Rule 37(d) of the Federal Rules of Civil Procedure for discovery abuse. We affirm.

I.

On January 25, 1996, Appellants filed separate complaints in the United States District Court for the district of Maryland under the Equal Pay Act of 1963, see 29 U.S.C.A. § 206(d) (West 1978), and Title VII of the Civil Rights Act of 1964, see 42 U.S.C.A. § 2000(e) (West 1994), alleging that their employer, Specialty Industries, Inc. (Appellee), engaged in a pervasive policy of sex discrimination.[1] Appellee answered and discovery began. In reviewing the propriety of the district court's dismissal with prejudice of Appellants' claims, we must recite the unfortunately lengthy timetable of events leading to the imposition of sanctions.

On March 7, 1996, the district court entered a Scheduling Order requiring discovery to be completed by October 9, 1996. Pursuant to Appellants' unopposed motion, the cases were referred to a magistrate judge to oversee the discovery process.

On April 26, 1996, Appellants served Interrogatories and Requests for Production of Documents on Appellee. Appellee timely responded on May 29. Sixty-five days later, on August 5, 1996, Appellants filed a Motion to Compel more complete answers to the April 26 discovery requests. Appellee moved to strike the motion as untimely under the

_____

[1] On August 28, 1996, the district court issued an order allowing the filing of amended complaints and consolidating the cases.

2

District of Maryland's local rules. In an order dated August 22, 1996, the magistrate judge granted Appellee's motion. He ruled that Appellants' motions failed to comply with Local Rule 104.8 in two respects.[2] First, the motion was filed outside the twenty-day window afforded by the rule, and second, Appellants improperly filed the motion with the district court prior to serving it upon opposing counsel, also in violation of the local rule. At the conclusion of the order, the magistrate judge admonished Appellants that "[n]o party should be allowed to thwart the purposes of the rule or to ignore the time requirements imposed by the Rule." (J.A. at 66.)

The problems continued, however. Before the magistrate judge issued that order, on August 9, 1996, Appellee had hand-delivered Interrogatories and Requests for Production of Documents and Things to Appellants' counsel. In accordance with Rules 33 and 24 of the Federal Rules of Civil Procedure, Appellants were required to respond by September 9, 1996. On September 13, however, Appellants had neither responded nor filed a request for an extension of time, despite Appellee notifying Appellants on September 9 that the responses were due and then warning Appellants on September 10

---

[2] Local Rule 104.8 provides, in pertinent part:

> a. <u>Service of motions papers</u>. If a party who has propounded interrogatories or requests for production is dissatisfied with the response to them, that party shall serve a motion to compel within twenty days of the party's receipt of the response. The memorandum in support of the motion shall set forth, as to each response to which the motion is directed, the discovery request, the response thereto and the asserted basis for the insufficiency of the response. The opposing party shall serve a memorandum in opposition to the motion within fourteen days thereafter. The moving party shall serve any reply memorandum within eleven days thereafter. The parties shall file with the Court notices of service of the motion and memoranda but not the motion and memoranda themselves . . . .
>
> b. <u>Conference of counsel</u>. Counsel are encouraged to confer with one another before or immediately after a motion to compel is filed. If they are unable to resolve their disputes, counsel must hold the conference required by LR 104.7 after serving upon one another all of the papers relating to the motion to compel.

that a motion to compel would be filed on September 12 if no responses were immediately forthcoming. As warned, on September 13, Appellee moved to compel answers to discovery and to impose sanctions against Appellants for their failure to respond to discovery requests.

When Appellants failed to respond to the Motion to Compel, the magistrate judge issued a Show Cause Order on September 18 directing Appellants to demonstrate by September 25 why an order should not be issued (1) dismissing the case with prejudice for noncompliance with discovery requests; (2) ordering the payment of Appellee's attorneys' fees incurred in filing the September 13 motion; and (3) awarding Appellee any other necessary relief. In his written Show Cause Order, the magistrate judge noted that this was the second time that Appellants' counsel had ignored the mandates of the local rules and warned Appellants and their counsel that the court would not tolerate further delays in the prosecution of the case. The magistrate judge also advised Appellants that their failure to timely respond to Appellee's discovery requests constituted a waiver of any objections that they may have had to any of the requests[3] and specifically warned Appellants that the failure to timely comply with the show cause order and Appellee's discovery requests could result in the dismissal with prejudice of their cases.

Five days later, on September 23, Appellants filed a response to the Show Cause Order to which they finally attached their answers to Appellee's Interrogatories and Requests for Production. Incredibly, these answers contained several objections, despite the magistrate judge's earlier finding that all objections had been deemed waived. Also, Appellants explained in their response that the good faith cause for their delay was that they were "hard-working people with very little education" and that compliance with Appellee's discovery requests proved to be "an overwhelming and daunting task." Specifically, Appellants' counsel noted that "[Appellants] were laboriously trying

_____

[3] The Show Cause Order contained a footnote alerting Appellants that "[f]ailure to timely respond to discovery requests is considered a waiver of any objections that the answering party may have to any of the requests." (J.A. at 76.)

4

to answer the `Instructions' section of the Interrogatories." (J.A. at 77.)

In response to Appellants' objections, Appellee advised Appellants' counsel by letter dated September 23, 1996, that the magistrate judge's September 18 Show Cause Order provided that Appellants had waived all objections due to their tardiness. Appellants refused to withdraw their objections, however, and on November 14, 1996, Appellee ultimately moved to compel compliance with the August 9 discovery request and the court's September 18 Show Cause Order. Meanwhile, during an October 1, 1996, deposition, Appellant D'Amico contradicted counsel's assertion that the discovery was tardy because she and Appellant Zornes were having difficulty understanding the "Instructions" of the Interrogatories.[4]

_____

[4] The following exchange occurred during Appellant D'Amico's October 1 deposition.

> Q: Which part of answering the Interrogatories was overwhelming to you?
>
> A: Just some of the questions were.
>
> Q: Now, it says here, that [Appellants] were "laboriously" trying to answer the "Instructions" of the Interrogatories, that's not true, is it?
>
> A: For me it wasn't.
>
> * * *
>
> Q: Did [Appellant Zornes] ever express any concern to you about anything in the instructions portion of the interrogatories?
>
> A: No.
>
> Q: So, based on your personal knowledge, this statement is untrue; is that correct?
>
> * * *
>
> A: For me.
>
> Q: For you, that's not true, is it?
>
> A: Right.

(J.A. at 235-36.)

5

On September 14, Appellants served Appellee with additional Interrogatories and a Request for Production of Documents. Appellants also served an amended request that they be permitted to enter the Appellee's premises and to inspect and photograph machinery pursuant to Rule 34 of the Federal Rules of Civil Procedure. By letters dated October 1 and 3, Appellee offered to allow Appellants, accompanied by counsel, to inspect the premises at the close of their shift and to allow photography at the conclusion of the main day shift. Appellants' counsel refused this offer, however, insisting that her clients be present during the inspection during their shift and that the machinery be photographed while in operation. On October 7, Appellee responded by moving for a Protective Order to prevent the requested inspection from taking place during work hours. Later, on October 15, Appellee moved for yet another Protective Order from the September 14 Interrogatories and Requests for Production of Documents, asserting that they had been served less than thirty days before the parties' stipulated October 9 discovery deadline in violation of Local Rule 104.2.

Meanwhile, on September 23, Appellants served upon Appellee a "Notice to Take Deposition" pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. On October 4, 1996, Appellee moved for issuance of a Protective Order and attorneys' fees due to the "absurdity of the scope" of the Appellants' Rule 30(b)(6) deposition notice/document request, arguing that Appellants' document production requests were overbroad and exceeded the number allowed by Local Rule 104.1. In response to Appellee's October 4 and 7 protective order motions, Appellants, on October 8, moved to compel compliance with their September 14 and September 23 discovery requests.

On November 18, the magistrate judge convened a hearing to discuss the numerous pending discovery motions. Specifically, he addressed (1) Appellants' Rule 30(b)(6) requests, (2) Appellants' Amended Request for Permission to Enter Premises and To Inspect and Photograph Machinery, (3) the timeliness of Appellants' September 14 Interrogatories and Requests for Production, and (4) Appellants' response to the magistrate judge's September 18 Show Cause Order.

As to Appellants' Rule 30(b)(6) requests, the magistrate judge found that they exceeded the number allowed by the local rules and

6

ordered the parties to agree upon document production at the deposition. As to the September 14 Interrogatories and Requests for Production, the magistrate judge granted the Appellee's motion for a protective order as to certain overbroad document requests. The magistrate judge allowed Appellants to present the remaining September 14 Requests, however, despite recognition that the Requests were untimely under the local rules. The magistrate judge also denied Appellants' October 8 Motion to Compel the inspection of the premises and adopted the parameters for the inspection previously proposed by Appellee. Finally, the magistrate judge admonished Appellants yet again for their continued failure to respond to Appellee's discovery responses which were due originally on September 9 and again ordered Appellants to submit completely their responses without objections, with the exception of objections based upon attorney work-product or attorney-client privilege. The magistrate judge further ordered the parties to establish a new discovery exchange schedule.

In response to the magistrate judge's orders, on November 26, Appellants' counsel proposed a revised discovery schedule. Appellee's counsel agreed, and the parties stipulated to December 12, 1996, as the deadline for written discovery responses, December 31 as the deadline for Rule 30(b)(6) and Rule 34 examinations, and January 31, 1997, as the deadline for summary judgment motions. **5** On December 12, however, Appellants' counsel notified Appellee via facsimile that due to "unforeseen difficulties, we will need an additional period of time in which to provide you with requested discovery." (J.A. at 162.) Appellants' counsel subsequently indicated that the exchange date would be December 13. Neither a response to the discovery request

_____

**5** Appellants characterize December 12 as a "target date" rather than a deadline for the parties to supplement their discovery. The proposed date resulted, however, from an order by the magistrate judge to agree upon a revised discovery timetable. Moreover, in their November 26, 1996, letter proposing the revised discovery schedule, Appellants gave no indication that their suggested dates were flexible"target dates" rather than deadlines. (J.A. at 161.) In light of the magistrate judge's order to establish a discovery schedule and the problems then existing, we have a difficult time accepting Appellants' current depiction of the discovery due dates.

nor a motion for extension of time followed, however; Appellee ultimately moved for dismissal with prejudice of Appellants' lawsuit on December 16.

On December 20, Appellants finally served their complete discovery responses, originally due on September 9, upon Appellee. These supplemental responses included a one-hundred-page journal which Appellant D'Amico had denied existed during her earlier deposition. Then, at 5:00 p.m. on December 31, the agreed-upon date for the conclusion of all discovery, Appellants requested permission to inspect the premises and review documents during the week of January 21-27. This request squarely conflicted with the parties' stipulation that all discovery would be completed by December 31. Moreover, Appellee had notified Appellants that the documents were available for review on December 12. Due to the untimeliness of the request, on January 8, 1997, Appellee moved for a Protective Order to deny the discovery.

Undeterred, Appellants moved on January 22 for entry of default judgment against Appellee for failure to comply with the magistrate judge's November 18 order which they asserted granted their Motion to Compel and ordered Appellee to produce certain documents, to fully answer various interrogatories, and to permit inspection of premises. Not surprisingly, on January 27, the magistrate judge issued an order barring any additional discovery motions.

On July 3, 1997, the magistrate judge issued an order granting Appellee's January 8 protective order and denying Appellants' January 22 default judgment motion. Further, finding Appellants' default motion to be utterly lacking in merit, the magistrate judge imposed sanctions against Appellants' counsel, ordering her to pay Appellee's attorneys' fees incurred as a result of Appellants' motion for default judgment, and a $500 fine. See Fed. R. Civ. P. 11. The magistrate judge based his rulings upon the following conclusions:

> [Appellants'] Motion is fraught with false allegations regarding Orders of the Court, misrepresentations of requests for extensions, meritless excuses and unsubstantiated allegations as to [Appellee's] failure to supply discovery which was neither ordered by this Court nor properly

8

requested by [Appellants]. The frivolousness of [Appellants'] Motion is evidenced by [Appellants'] counsel's complete failure to proffer dates to conduct the outstanding discovery or to file the appropriate motion to compel. Additionally, a bad faith, retaliatory purpose seems evident in light of [Appellants'] counsel's failure to attempt to conduct or compel discovery in a timely manner. Thus, this Court finds that [Appellants'] counsel's history of continued disregard for the letter and spirit of the Federal Rules, Local Rules, and Orders of this Court merits sanctions.

(J.A. at 203.) The magistrate judge simultaneously issued a Report and Recommendation to the district court to dismiss Appellants' suit with prejudice for abuse of discovery under Rule 37(d). The magistrate judge found that counsel's "history of untimeliness and eleventh hour extension[s]" evidenced "bad faith." (J.A. at 210.) The magistrate judge sharply rebuked counsel for providing a "questionable response to a Show Cause Order," and for "directly violat[ing] Fed. R. Civ. P. 33(b)(4), and this Court's explicit Order." (J.A. at 211.)

After a de novo review, see Fed. R. Civ. P. 72(b), the district court fully adopted the recommendation of the magistrate judge and granted Appellee's motion to dismiss by order dated August 26, 1997. The district court also imposed sanctions against Appellants' counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure. Appellants appeal the dismissal of their cases.**6**

II.

Rule 37(d) of the Federal Rules of Civil Procedure gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders. Thus, it is only for an abuse of discretion that a reviewing court may reverse the decision of the district court. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976); United States v. Shaffer Equip. Co., 11 F.3d 450, 462 (4th Cir. 1993). In fact, the Supreme Court has cautioned us not to allow the "natural tendency on the part of reviewing

_____

**6** Appellants do not appeal the imposition of Rule 11 sanctions against their attorney.

courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order." National Hockey League, 427 U.S. at 642. "The question, of course, is not whether [we] would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing." Id.

In an effort to balance the competing interests of the due process rights of the litigants and the integrity of the judicial process, the Supreme Court has held that a court must consider four factors before imposing sanctions under Rule 37(d): (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the party's non-compliance caused the opposing party, which necessarily includes an inquiry into the materiality of the evidence that the noncomplying party failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. See Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., 872 F.2d 88, 92 (4th Cir. 1989). The Fourth Circuit has stated further that before dismissing a case with prejudice, the district court must give a party a "clear and explicit" warning of the consequences of failing to satisfy the court's conditions and orders. Choice Hotels Int'l, Inc. v. Goodwin & Boone, 11 F.3d 469, 472 (4th Cir. 1993); see also Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 40-41 (4th Cir. 1995) (noting that "this court has emphasized the significance of warning a defendant about the possibility of default[under Rule 37] before entering such a harsh sanction"); Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 n.2 (4th Cir. 1987) (noting that warning to parties was a "salient fact" that distinguished cases in which default judgment was appropriate sanction for discovery abuse under Rule 37).

In this case, the magistrate judge expressly warned Appellants early in the parties' litigation that further discovery abuse would result in the dismissal of their actions. In his August 22 order, the magistrate judge wrote that "[n]o party should be allowed to thwart the purposes of the rule or to ignore the time requirements imposed by the Rule." (J.A. at 66.) Again, in his September 18 Show Cause Order, the magistrate judge specifically warned that failure to comply with the requirements of the discovery rules could result in dismissal with prejudice of Appellants' claims. Finally, the magistrate judge

10

verbally chastised Appellants during the November 18 hearing and ordered their compliance with Appellee's discovery requests.[7] In spite of these clear warnings, Appellants nevertheless continued to violate the magistrate judge's orders, ignore the Rules of Civil Procedure, and unreasonably reject Appellee's attempts to maintain an orderly discovery process. As a result, we cannot say that the district court abused its discretion when it ultimately resorted to the severest sanction of dismissing Appellants' complaints with prejudice pursuant to Rule 37(d) of the Federal Rules of Civil Procedure.

A.

In considering the first element of the four-part test, we have held that the district courts should restrict their imposition of the ultimate sanction of dismissal with prejudice to "only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules." Mutual Fed. Sav. & Loan Ass'n, 872 F.2d at 92. We are convinced that, unfortunately, this high standard was met in this case. The district court found that Appellants' bad faith was demonstrated by, among other things, Appellants' numerous "eleventh hour extensions" and consistent disregard of discovery deadlines, despite Appellee's good faith prodding and the magistrate judge's warning in the Show Cause Order that such delays would not be tolerated. The district court specifically found that Appellants' tardy October 8 submission of objections to Appellee's Interrogatories was in direct violation of the

_____

[7] The dissent chastises the majority's reliance upon the statements made in the November 18 hearing, noting that "[w]ith no hearing transcript or written order to inform us, there is no way to ascertain exactly what was conveyed to the parties." Dissent op. at 30. While we acknowledge that no transcript or order memorializes the statements made, the dissent fails to acknowledge that the magistrate judge characterized his November 18 warnings in his Report and Recommendation as "verbal admonitions [that] put Plaintiffs on notice that further discovery abuse would not be tolerated." (J.A. at 211.) Absent evidence (or even argument) from Appellants to the contrary, unlike the dissent, the majority relies upon the magistrate judge's own history of the hearing -- that he delivered a clear message that further discovery abuse would lead to dismissal.

11

September 18 Show Cause Order.**8** The district court also pointed to

_____

**8** Appellants argue for the first time in their Reply Brief that they did not wilfully or intentionally violate the Show Cause Order because their only objections were either "attorney-client and work-product privileges" or "`form objections' produced from a word processor's memory." Appellants' Reply Br. at 10-11. In support of this proposition, Appellants have filed an accompanying motion to supplement their Reply Brief with the entirety of their answers to Appellee's Interrogatories and Request for Production of Documents. Appellee has moved to strike the portions of Appellants' Reply Brief concerning this argument and opposes Appellants' Motion to Supplement the Reply Brief on the grounds that these factual issues were never presented to the district court and were omitted from Appellants' Opening Brief. We grant Appellee's motion to strike this portion of Appellants' Reply Brief and deny Appellants' motion to supplement their Reply Brief with their responses to Appellee's discovery requests.

The magistrate judge recommended that Appellants' cases be dismissed with prejudice, in part, because they submitted objections to Appellee's August 9 discovery requests in violation of the Show Cause order, the Federal Rules of Civil Procedure, and the local rules. In their objections to the Proposed Findings and Recommendation of the Magistrate Judge, Appellants asserted that the magistrate judge's finding that Appellants submitted objections in bad faith was erroneous because (1) the order "did not explicitly state that Appellants had waived their right to objections" and (2) they "believed that they showed good cause[, i.e., Appellants' difficulties understanding the questions posed,] and, for that reason, did not believe that they had waived their objections." Objections By Plaintiffs To Proposed Findings And Recommendations Of Magistrate Judge, C.A. No. S-96-244 (July 18, 1997). This argument (that Appellants believed that they had not waived any objections because they had "good cause" for their delay) is an entirely separate and distinct argument from that posed in their Reply Brief. Accordingly, we decline to consider it. See Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998) (declining to review issues not raised in the district court).

Further, even if the issue was raised below, Appellants' failure to present it in their Opening Brief forecloses our review of it. See Cavallo v. Star Enter., 100 F.3d 1150, 1152, n.2 (4th Cir. 1996) (holding that arguments not raised on appeal by appellants until their reply brief were not properly before the appellate court regardless of whether question was raised in district court), cert. denied, 118 S. Ct. 684 (1998). The only mention of the "objection issue" in Appellants' Opening Brief is in an

12

Appellants' failure to comply with the December 12 deadline for providing supplemental answers to interrogatories. Noncompliance with this due date was especially egregious because Appellants themselves proposed the due date, and these same answers were the subject of two prior Motions to Compel. Moreover, Appellants utterly failed to articulate any good cause for the delay. This "blatant disregard" for the court's order and the rules, (J.A. at 254), the court concluded, evidenced bad faith warranting dismissal. See Mutual Fed. Sav. & Loan Ass'n, 872 F.2d at 92 (holding that dismissal with prejudice is proper when a "party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules").

Moreover, in addition to Appellants' lack of compliance with the court's order and rules, the magistrate judge made findings, adopted by the district court, that Appellants made affirmative misrepresentations to the magistrate judge. As discussed, supra, Appellants' counsel filed a response to the magistrate judge's September 18 Show Cause Order in which she posited that the good faith cause for Appellants' delay in complying with Appellee's discovery requests was that "Plaintiffs were laboriously trying to answer the`Instructions' section

_____

argument to refute the district court's assertion that Appellee suffered prejudice when it incurred additional expenses as a result of filing successive motions to compel. Appellants argue that the magistrate judge's later acknowledgment that Appellants had not waived their right to object on the grounds of work-product or privilege was a ruling against Appellee; therefore, Appellants argue, they should not be penalized for expenses Appellee incurred filing a motion which it subsequently lost. Again, this argument which solely addresses the prejudice factor, is completely different from the one in the Reply Brief which addresses Appellants' alleged bad faith.

Finally, Fourth Circuit Rule 28(b) requires that a party wishing to attach supplemental material to a brief must present the proposed material under separate cover "accompanied by a motion for leave to file that specifically identifies the proposed material, indicates whether it is a matter of record, and sets forth good cause for deviating from the general prohibition of attachments to briefs." Fourth Cir. R.28(b). We deny Appellants' motion to supplement the Reply Brief with the proposed material because they have failed even to attempt to articulate good cause for granting the motion.

13

of the Interrogatories." (J.A. at 77). However, as noted, supra at n.4, Appellant D'Amico denied in a later deposition that she was having difficulty understanding the interrogatory instructions. She further stated that Appellant Zornes had not expressed any concern to her about understanding the instruction section of the interrogatories. Appellants' filing of what the magistrate judge appropriately characterized as a "questionable response" to its Show Cause Order further supports the district court's conclusion that Appellants' constant delays and noncompliance were motivated by bad faith. (J.A. at 211.) These findings more than adequately support the district court's finding of bad faith.[9]

B.

As to the prejudice to Appellee, the district court determined that Appellants' "delays in providing answers in a timely fashion ha[d] . . . materially prejudiced the Defendant." (J.A. at 255.) In particular, the district court cited Appellants' failure to produce a one-hundred-page diary chronicling alleged acts of harassment perpetrated by Appellants' co-workers until after the discovery due date. This failure, the court found, was exaggerated by the fact that Appellant D'Amico flatly denied the existence of such a journal during her October 1,

_____

[9] The dissent contends that our statement that the magistrate judge found that Appellants "made affirmative misrepresentations" to the court "is an overstatement of what the magistrate judge found." Dissent op. at 33. The dissent then continues on to explain "[w]hat actually happened." Id. In response to the dissent's first assertion, we cite footnote 2 of the magistrate judge's Report and Recommendation in which he notes the court's "concern about deposition testimony by Plaintiff Shirley D'Amico which directly controverted assertion of counsel in her Response to the Show Cause Order." (emphasis added) (J.A. at 211.) Further, while we find the dissent's explanation of the deposition testimony of Plaintiff D'Amico interesting, it is an argument and explanation that Appellants have never offered to this Court. On appeal, Appellants have not taken issue with the magistrate judge's finding that the deposition testimony "directly controverted" the assertions of counsel. Accordingly, while the dissent's view of the deposition testimony may be supportable, it is not one espoused by Appellants. Although it is often tempting to step into the advocate's shoes, we believe that judicial restraint mandates that we leave advocacy to parties' able counsel.

14

1996, deposition.**10** In addition to withholding the diary from Appellee, Appellants also failed to respond to Appellee's Interrogatories

_____

**10** In their Reply Brief, Appellants argue for the first time that any prejudice suffered by the Appellee due to Appellant D'Amico's perjury was minimized when D'Amico admitted that such a diary existed during her deposition the very next day. Appellants contend that as a result of Appellant D'Amico's deposition, Appellee knew of the diary's existence on October 2, 1996, and any prejudice Appellee suffered is the result of Appellee's own failure to pursue a known line of inquiry. In support of this factual allegation, Appellants move that they be allowed to supplement their Reply Brief with excerpts from Appellant D'Amico's October 2 deposition in which she allegedly admitted to the diary's existence. Appellee moves to strike the portions of Appellants' Reply Brief concerning the alleged recantation and oppose Appellants' Motion to Supplement the Reply Brief because, like the argument referred to in n.8, Appellants failed to raise the alleged recantation below or in their Opening Brief. We agree and grant Appellee's Motion to Strike and deny Appellants' Motion to Supplement their brief.

Despite Appellants' assertions to the contrary, this claim was not presented to the district court for its consideration. As such, Appellants' claim is foreclosed from appellate review. See Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998) (holding that issues raised for the first time on appeal will not be considered absent exceptional circumstances). Appellants admit that they failed to address D'Amico's perjury in any of their motions to the magistrate judge or the district court. Nevertheless, they incredibly assert that the issue was properly placed before the district court because (1) Appellee attached pertinent portions of the October 2 deposition transcript to a wholly unrelated November 14, 1996, document filed with the district court, and (2) Appellee raised the issue of D'Amico's perjury to the district court in its Reply to Appellants' Response to Appellee's Motion to Dismiss. This argument is completely without merit. District courts are not required "to anticipate all arguments that clever counsel may present in some appellate future. To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a . . . plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). Because the district court was not presented with Appellants' argument, it obviously did not abuse its discretion in failing to consider it.

Second, despite the district court's express reliance upon Appellant D'Amico's failure to disclose the diary as a basis for dismissing the com-

15

and Requests for Production of Documents by the original September 9, 1996, deadline. Further, when Appellants finally answered the

_____

plaints, Appellants inexplicably did not address the issue in their Opening Brief to this court. Rather, they waited until their Reply Brief to attempt to refute the district court's finding. Consequently, even if the issue were raised in the district court, we decline to consider it. See Cavallo v. Star Enter., 100 F.3d 1150, 1152, n.2 (4th Cir. 1996) (holding that arguments not raised on appeal by appellants until their reply brief were not properly before the appellate court regardless of whether question was raised in district court), cert. denied , 118 S. Ct. 684 (1998). As a result of the foregoing reasoning, we deny Appellants' motion to supplement the record on appeal with excerpts from Appellant D'Amico's October 2 deposition.

The dissent, incredibly, asserts that Appellants' failure initially to brief the issue of whether Appellant D'Amico committed perjury should be excused because Appellee did not use the word "perjury" below. See Dissent op. at 43-44 n.20. If Appellants read either"Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss" or "Defendant's Reply to Plaintiff's Objections to the Findings of the Court Regarding Sanctions," they were fully apprised of Appellee's allegations regarding Appellant D'Amico's nondisclosure under oath of the diary. That Appellees failed to invoke the term "perjury" until on appeal to this Court is of no moment. Appellee's argument was clear.

As noted in n.9, supra, we decline to make Appellants' case as the dissent has done. While the result in this case may appear to be harsh, we cannot condone the dissent's willingness to excuse Appellants' failure to challenge the district court's conclusion that Appellant D'Amico comitted perjury regarding the diary in their initial brief (a finding, we emphasize, that was strenuously sought by Appellees in two separate motions). The dissent seems to dismiss the district court's conclusion because the ruling totaled only "7 words in a 27-page order." Dissent op. at 43-44 n.20. The length of the district court's ruling is not relevant to our inquiry. The district court clearly concluded that Appellant D'Amico was not truthful, and Appellants did not appeal that ruling.

Moreover, even if we considered Appellants' argument, it would not change the outcome of this appeal. To the contrary, that Appellants possessed the diary and knew that it was the subject of a proper discovery request, and yet deliberately failed to produce it until two months after the October 2 deposition and four months after the initial August 9 dis-

16

overdue interrogatories, they improperly answered with objections in violation of Rule 33(b)(4) of the Federal Rules of Civil Procedure[11] and the magistrate judge's Show Cause Order. The district court noted that all of these improprieties by Appellants required Appellee to file numerous Motions to Compel and Protective Orders, resulting in the expenditure of significant attorneys' fees.

The record supports the district court's finding of substantial prejudice. Appellants protest that any prejudice Appellee may have suffered as a result of their delay was minimized by their ultimate compliance with all discovery requests by December 20, 1996, only eight days after the parties' stipulated due date. We disagree. Appellants' decision to withhold certain materials from Appellee, notably the diary, until ten days before the discovery deadline effectively prevented Appellee from pursuing any further discovery.

In addition, although Appellants' counsel was assessed attorneys' fees related to Appellee's defense of Appellants' frivolous Motion for Default Judgment, the district court noted that Appellee was forced unnecessarily to expend monies defending against other meritless motions and pursuing overdue discovery in this case. The district court cited at least three such instances, including (1) defense of Appellants' August 6 Motion to Compel, (2) Appellee's September

_____

covery request, is unexcusable. Appellants' attempt to shift the burden back to the Appellee to pursue discovery of the diary that it had already requested to no avail further demonstrates Appellants' conscious disregard of Appellee's discovery requests. As to the dissent's assertion that Appellants' counsel objected to production of the journal on privilege or work-product grounds, we find no basis in the record on appeal or in Appellants' briefs for this proposition.

[11] The Federal Rules of Civil Procedure provide:

> All grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown.

Fed. R. Civ. P. 33(b)(4). As noted, supra, Appellants filed numerous objections to Appellee's interrogatories without offering any good cause in direct violation of both the court's order and the Rules.

17

13 Motion to Compel, and (3) Appellee's November 14 Motion to Compel. We agree with the district court that Appellee was substantially prejudiced by having to incur significant additional legal fees as a result of Appellants' continued discovery abuses. See Zaczek v. Fauquier County, Va., 764 F. Supp. 1071, 1079 (E.D. Va. 1991) (dismissing with prejudice action, in part, because plaintiff's misconduct caused defendants "unnecessary expenses for costs and attorneys fees"), aff'd, 16 F.3d 414 (4th Cir. 1993); Aerodyne Sys. Eng'g v. Heritage Int'l Bank, 115 F.R.D. 281, 290-91 (D. Md. 1987) (dismissing with prejudice action under Rule 37, in part, because party was "prejudiced by the fact that it has been put to substantial expense in seeking discovery and has faced substantial delay in proceeding with . . . litigation"). The district court's conclusion that the cumulative effect of Appellants' misconduct substantially prejudiced Appellee was not an abuse of discretion.

C.

As to the third factor for consideration -- the need to deter non-compliance with the rules of discovery and the directives of the court -- the Supreme Court has held that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." National Hockey League, 427 U.S. at 643. In the instant case, Appellants chose to ignore the Local Rules, the Federal Rules of Civil Procedure, and the magistrate judge's orders, despite numerous written and verbal warnings that such violations would not be countenanced. In light of the dramatic increase in federal court litigation, we will not circumscribe the district courts' ability to maintain efficiently their dockets and to guard jealously the court's integrity. See Lolatchy, 816 F.2d at 957 (noting that trial judge's supervision of pretrial discovery is entitled to deference because of the "superiority of the trial judge's position to supervise the litigants and assess their good faith" (internal quotation marks omitted)) (Wilkinson, J., dissenting). For it is the court's duty to protect the interests not only of the parties directly prejudiced by discovery abuse, but also those litigants indirectly prejudiced when the court's resources are squandered due to an abusing party's misconduct. Cf. National Hockey League,

18

427 U.S. at 643 (affirming district court's dismissal with prejudice of appellant's case under Rule 37, in part, because"it might well be that [petitioner] would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts."); 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil § 2284, at 640 (2d ed. 1994) (noting that district courts are "tak[ing] a tougher view of sanctions for discovery violations, and that sanctions are, as the Supreme Court invited in National Hockey League, now being looked to for their deterrent effect in other cases rather than merely as a remedy for the wrong done in the case at hand"). As a result, we cannot say that the district court abused its discretion when it concluded that Appellants' continued discovery abuse in the face of an explicit warning "warrant[ed] dismissal as a way to deter future egregious behavior." (J.A. at 259.)

D.

Finally, we must consider whether a less drastic sanction would have been effective to stop Appellants' misconduct. Appellants contend that the more appropriate sanction in this case would have been the levying of attorneys' fees against Appellants' counsel under Rule 37 with a warning that future abuse would lead to dismissal. We disagree. First, Appellants received such a warning from the magistrate judge and chose to ignore it. Second, while this sanction was available to the district court, it was not the only one. The purpose of Rule 37 is to allow the district courts to punish deliberate noncompliance with the federal rules of discovery and to deter such conduct in the future. To that end, Rule 37 is flexible. It gives the district court a wide range of possible sanctions from which the court is given the discretion to choose the most appropriate considering the unique circumstances of each case. See 8A Wright & Miller, Federal Practice & Procedure, § 2284, at 614-15 (1994) ("The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective, and plural. The district court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even.").

As stated previously, Appellants and their counsel were warned repeatedly by the magistrate judge in his written orders that discovery

19

abuses would not be tolerated and continued noncompliance could lead to dismissal with prejudice of Appellants' cases. Subsequent to the issuance of these warnings, Appellants were chastised again by the magistrate judge during the November 18, 1996, hearing for their continued abuses. Nevertheless, Appellants continued to flout the rules by missing the December 12 discovery due date and requesting discovery past the December 31 deadline. In view of Appellants' history of continued discovery abuse in wilful defiance of the magistrate judge's warnings, we cannot say that dismissal was not an appropriate sanction.

III.

"[W]hen a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action." Shaffer Equip. Co., 11 F.3d at 462; see also Zaczek, 764 F. Supp. at 1076 (noting that "federal judges possess the inherent authority to dismiss a complaint to sanction litigants or attorneys who violate court orders, abuse the litigation process, or otherwise conduct the litigation in bad faith" (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-66 (1980))). The discovery disputes in this case began with Appellants' filing an untimely Motion to Compel in violation of the local rules and ended with Appellants' filing of a frivolous Motion for Default Judgment against Appellee. In the interim, Appellants demonstrated an incredible disregard for the local rules, Federal Rules of Civil Procedure, and the magistrate judge's Show Cause order in which he specifically warned Appellants and their counsel that the court would not tolerate delays in the prosecution of their case and that a failure to respond to discovery requests could result in the dismissal with prejudice of their actions. (J.A. at 76.) Based upon the foregoing and the facts enumerated above, the district court did not abuse its discretion when it levied the ultimate sanction against Appellants.[12] Accordingly, the district court's order

_____

[12] Having ruled in favor of Appellee, we conclude that its Motion to Strike portions of Appellants' Opening Brief is moot. Further, as this appeal was not frivolous, we deny Appellee's motion for costs.

dismissing with prejudice Appellants' actions is

AFFIRMED.

TRAXLER, Circuit Judge, dissenting:

With respect, I dissent. In my opinion, the district court abused its discretion by dismissing these cases with prejudice under Rule 37(d) as a first sanction for plaintiffs' 3 month delay in completing their response to defendant's last minute discovery requests.

Donna Zornes and Shirley D'Amico ("plaintiffs") filed these lawsuits against Specialty Industries, Inc. ("defendant") in January 1996. Discovery disputes ensued, and at times became acrimonious. However, the discovery delay leading to the dismissal under Rule 37(d)**1** -- plaintiffs' tardy responses to defendant's discovery -- lasted less than four months, during which time the magistrate judge (to whom all discovery oversight had been assigned) issued a single 2-page Rule to Show Cause that received no further action and held a single hearing which resulted in no written order and for which we have no transcript. The magistrate judge never issued an order compelling plaintiffs to produce discovery by a specific deadline or face dismissal and, despite defense counsel's requests, never imposed a sanction upon plaintiffs' counsel -- opting instead to recommend, as the first sanction, outright dismissal of plaintiffs' complaints. The district judge, also without conducting a hearing or issuing a prior order, accepted the recommendation and dismissed the actions.**2**

_____

**1** Under Rule 37(d), the district court may impose sanctions "[i]f a party ... fails ... to serve answers or objections to interrogatories submitted under Rule 33 ... or [ ] to serve a written response to a request for inspection submitted under Rule 34." Fed.R.Civ.P. 37(d). Although the majority has also referenced the inherent authority of a judge to impose the sanction of dismissal, see, e.g., United States v. Shaffer Equip. Co., 11 F.3d 450, 462-63 (4th Cir. 1993), the district judge relied solely upon Rule 37(d).

**2** In relating the background of this case, I have noted when hearings were not held by the magistrate judge or district judge. I fully recognize that Local Rule 105 of the District of Maryland permits courts to rule upon motions without a hearing and I know that this is a common prac-

21

In recommending dismissal, the magistrate judge erroneously concluded that defendant had been prejudiced by a 10-month delay in receiving responses to its discovery requests. The district judge recognized the error, as defendant's requests were not served until August 1996 and were "answered properly" in plaintiffs' second supplemental responses served on December 20, 1996. J.A. 255. Yet the district judge, eight months after these complete responses were served, nevertheless dismissed both complaints pursuant to Fed.R.Civ.P. 37(d), having concluded that defendant had been prejudiced because the December 20 production had "included a one hundred page journal entry which [p]laintiff D'Amico had previously denied existed." J.A. 255. Unfortunately, this finding was erroneous -- the product of several misrepresentations made to the district judge concerning the discovery at issue.

Thus, I dissent, not because I condone the delay by plaintiffs' counsel, but because the events below do not rise, as a matter of law, to the level necessary to justify, as a <u>first</u> sanction, the drastic consequence of dismissal with prejudice. In my opinion, its imposition was unduly hasty, unfair to plaintiffs, and inconsistent with prior decisions of this court.**3**

_____

tice in the various districts, including my own. The decision to conduct or forgo a hearing under these circumstances is indeed a matter of discretion on the part of district courts, but the exercise of this discretion is appropriately considered by this court in reviewing an imposition of the most harsh sanction available. As will be pointed out later, there were misconceptions on the part of the magistrate judge and the district judge regarding important facts in this case which might have been eliminated with courtroom hearings. Accordingly, I would temper the deference normally given the trial court's decision in these matters because this deference is predicated to a certain extent on the contact the district court has with the attorneys and litigants and here this contact was very limited.

**3** Alarmed by inconsistencies between the incomplete joint appendix before us and troublesome assertions made by defense counsel, I requested and reviewed the full record below. Having found therein substantially relevant information, I have relied upon it in this dissent.

22

Facts

As reflected in the majority opinion, the procedural history of this case is convoluted. Although plaintiffs filed these lawsuits in January 1996, virtually no discovery was conducted by either side during the ensuing months. When plaintiffs' counsel served interrogatories and requests for production on April 26 however, conflicts began to arise. Defense counsel served answers and objections to plaintiffs' discovery, which plaintiffs' counsel felt were incomplete. She wrote defense counsel a letter on June 12, within 20 days after receipt of the responses, in an attempt to informally resolve the problem. In my opinion, such a practice is commendable and should be encouraged.**4** Defense counsel ignored the first letter, so plaintiffs' counsel made a second attempt at an informal resolution. This second try at a resolution short of court intervention was met by a flat refusal from defense counsel, who then called her on the 20-day rule. Continuing her efforts to secure complete responses to her discovery requests, plaintiffs' counsel filed a motion to compel on August 5. **5**

Five days later, on August 9, defense counsel served his <u>first</u> set of written discovery requests -- five months after the first scheduling order was issued and at the latest possible time to afford a response under the discovery deadline, which had already been extended by consent to September 9. Thus, it is hardly surprising that defense counsel joined with plaintiffs' counsel on September 6 (three days before plaintiffs' responses were due) in obtaining an additional 30-day extension of discovery to October 9. Defense counsel, however, refused to allow plaintiffs any additional time to respond to defendant's outstanding discovery requests, and on September 16 filed a motion to compel, a motion to shorten plaintiffs' time to respond to

_____

**4** As noted by the majority, Local Rule 104.8(a) of the District of Maryland requires a party dissatisfied with discovery responses to serve a motion to compel within 20-days of the party's receipt of the responses. Local Rule 104.8(b) also encourages counsel to confer with one another and attempt to resolve disputes before or immediately after a motion to compel is filed.

**5** On August 22, the magistrate judge summarily denied this motion, as he had the right to do, because technically it was made beyond the 20-day time limit.

the motion to compel, and a motion for sanctions. Defense counsel contends these motions were necessitated by the October 9 deadline -- an interesting theory given his own contribution to the discovery delays -- yet there is no indication the court was putting time pressures upon the litigants.

Immediately upon receipt of the defendant's motions, the magistrate judge on September 19 issued a Rule to the plaintiffs to show cause why an order should not be issued dismissing their cases with prejudice or imposing other sanctions. The magistrate judge simultaneously denied the defendant's motion to shorten the plaintiffs' time to respond, specifically noting that any prejudice the defendant might suffer as a result of the impending October 9 deadline was "of its own making by waiting so long to propound discovery requests." J.A. 75.[6] Plaintiffs' counsel filed a response to the Rule on September 23, within the court's deadline, and attached her discovery responses, which resulted in her missing the original 30-day time limit for response by 14 days.

This Rule is significant for several reasons. First, and most importantly, no hearing was held, no order predicated upon the Rule was issued, and no sanctions were imposed. Second, this Rule would turn out to be the only written document issued by the court prior to the decision to sanction plaintiffs by dismissing their cases. Third, this Rule, which as stated above was never acted upon by the court, contained a footnote in which the magistrate judge stated, that "[f]ailure to timely respond to discovery requests is considered a waiver of any objections that the answering party may have to any of the requests." J.A. 76. Although the Rule was never acted upon, the district judge and the majority would later attach great significance to this footnote.

On October 1 and 2, defense counsel deposed plaintiff D'Amico. During this deposition, D'Amico advised defense counsel that she and

_____

[6] The majority states that the Rule to Show Cause was issued when plaintiffs failed to respond to the motion to compel. However, the motion to compel was not served until September 16 and the Rule to Show Cause was filed September 19. Thus, I would not conclude that the Rule was issued because plaintiffs "failed to respond" to defendant's motion to compel.

24

Zornes had been keeping journals of incidents which occurred in the workplace. Plaintiffs served supplemental responses to defendant's written discovery requests on October 8, in accordance with Fed.R.Civ.P. 26(e), but did not produce the journals, apparently asserting that the journals were protected by the attorney-client and work-product privileges. Defendant, however, raised no claim of a deficiency in the October 8 responses with the court until November 14, when it filed a motion to compel plaintiffs to withdraw their objections and supplement their responses -- four days in advance of a hearing which had been scheduled for November 18 to address several unrelated discovery motions filed in the interim. It apparently escaped notice that, in doing so, defendant violated, with impunity, the same 20-day deadline for filing a motion to compel imposed by Local Rule 104.8 that defendant had earlier enforced against plaintiff. Defense counsel argued in part that he was entitled to the journal because D'Amico had waived the attorney-client and work-product privileges by discussing the journal during her deposition, and attached in support the portions of D'Amico's deposition transcript in which she disclosed the journal's existence.

The November 18 hearing was the only hearing ever held in this case. Yet there is no written order from it to review, and the parties have not given us the benefit of a hearing transcript. According to the magistrate judge, however, counsel reached an agreement during the hearing as to what supplemental discovery would be produced by each side. In addition, the magistrate judge determined, despite the footnote in the Rule to Show Cause, that plaintiffs had not, in fact, waived objections based upon the attorney-client and work-product privileges. We also know, from the docket sheet, that the September 16 motion to compel which led to the Rule was deemed to be "[m]oot[ ]" at the conclusion of the hearing. J.A. 6. Significantly, the magistrate judge imposed no deadline for the exchange of materials, the completion of discovery, the filing of dispositive motions, or the trial, leaving me doubtful that the discovery issue was as severe as defense counsel would now have us believe. Instead, the magistrate judge asked both counsel to agree upon the remaining discovery deadlines and advise him of an agreed deadline for dispositive motions only. According to the report and recommendation, "the parties were put on notice that further character attacks by or upon counsel for either party would not be tolerated, and the parties were

25

ordered to agree upon a revised discovery time table and proceed with the conclusion of discovery." J.A. 209. There is <u>no</u> indication plaintiffs' counsel was singled out for a specific warning and no sanctions were imposed during the hearing.

Counsel thereafter agreed to a written discovery exchange date of December 12 and a discovery deadline of December 31. On December 12, plaintiffs' counsel notified defense counsel that her supplemental responses were not ready and that some additional time was necessary. Since this was not, in my opinion, a court-mandated exchange date, the parties were free to alter their agreed-upon schedule. Defense counsel declined to do so, however, and filed the motion to dismiss four days later. The discovery requests were "answered properly" in plaintiffs' supplemental responses served on December 20, which included production of the journal discussed during D'Amico's deposition. J.A. 255. Although the journal was produced one week beyond the agreed-upon December 12 exchange date, the discovery deadline had not yet passed, dispositive motions were not due until January 31, 1997, and there was no trial date set. Indeed, the pre-trial conference was not scheduled to be held until late March 1997.

Nevertheless, seven months after the motion to dismiss was filed, the magistrate judge recommended dismissal with prejudice for what he mistakenly believed had been a 10-month delay by plaintiffs in fully responding to defendant's requests. The district judge correctly noted that there had been only a 3 month delay, but believed (at the suggestion of defense counsel) that D'Amico had unequivocally denied the existence of the journal during her deposition and that defendant first learned of this document in December 1996, when in fact D'Amico had unquestionably disclosed the existence of her journal during the very same deposition. Assuming that defendant had been prejudiced by plaintiffs' production of the journal on December 20, the district judge dismissed plaintiffs' complaints.[7]

_____

[7] The majority has also described the events which transpired after December 20, primarily plaintiffs' counsel's attempt to conduct discovery after December 31 and the motion for default filed in January 1997. In response to these events, the magistrate judge suspended the disposi-

26

Discussion

It is well established that dismissal under Rule 37(d) should be limited to "the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the [r]ules." <u>Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs. Inc.</u>, 872 F.2d 88, 92 (4th Cir. 1989). This is because dismissal "infringe[s] upon a party's right to trial by jury under the seventh amendment and runs counter to sound public policy of deciding cases on their merits, and against depriving a party of his fair day in court." <u>Wilson v. Volkswagen of Am. Inc.</u>, 561 F.2d 494, 503-04 (4th Cir. 1977) (footnotes and internal quotation marks omitted).

A district court's decision to grant sanctions under Rule 37(d) is reviewed on appeal for abuse of discretion. <u>See Wilson</u>, 561 F.2d at 505. "This does not mean, though, that an appellate court should automatically affirm such exercise of discretion," and "an appellate court would be remiss in [its] duties if [it] chose only to rubber stamp such orders of lower courts." <u>Id.</u> at 505-06 (internal quotation marks omitted) (alteration in original). Rather, this court "is obligated to consider the full record as well as the reasons assigned by the [district court] for its judgment, and to reverse the judgment below, if after such review, the appellate court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." <u>Id.</u> at 505 (internal quotation marks omitted). The specific factors are (1) whether plaintiffs acted in bad faith; (2) whether defendant has been prejudiced in the defense of the lawsuit, which includes an inquiry into the materi-

_____

tive motions deadline and stayed further discovery pending resolution of the existing motions. I do not quarrel with the court's frustration with plaintiffs' counsel after receiving defendant's motion to dismiss, but the district judge specifically noted that no sanctions would be imposed upon Zornes and D'Amico for these acts. They were instead the subject of the court's imposition of a <u>personal</u> sanction against plaintiffs' counsel under Fed.R.Civ.P. 11, consisting of a fine and attorneys' fees incurred by defendant in responding to the motion for default. Because they are not a subject of the district court's decision to dismiss the claims of the plaintiffs, I do not rely upon them.

27

ality of the evidence which was not produced; (3) the need to deter the type of noncompliance at issue in the future; and (4) the effectiveness of less drastic sanctions as a preliminary deterrent. See Mutual, 872 F.2d at 92; see also Hathcock v. Navistar Int'l Trans. Corp., 53 F.3d 36, 40-41 (4th Cir. 1995). In addition, the court must consider whether plaintiffs were clearly warned of the threat of dismissal and given an opportunity to avoid the sanction. See Hathcock, 53 F.3d at 40. Applying these factors, I am convinced that the district court abused its discretion in this case by dismissing these cases.

An Insufficient Warning, And Never
A Less Drastic Sanction

In this case the majority equates, wrongly I believe, the required consideration of warnings with that of the effectiveness of less drastic sanctions. Specifically, the majority concludes that the magistrate judge's failure to impose any sanction prior to recommending outright dismissal of plaintiffs' complaints was justified by plaintiffs' counsel's disregard of his prior warnings. In my view, the "warnings" issued by the magistrate judge, and relied upon by the majority, fall far short of the clarity and specificity required to justify imposition of dismissal with prejudice. And, they certainly do not rise to a level sufficient to justify a complete disregard of the "lesser sanctions" strongly encouraged, except in the most unusual cases, as a predecessor to dismissal or default.

I begin with the lack of sufficient "warnings" of dismissal, the significance of which has been often emphasized by this court. See Hathcock, 53 F.3d at 40; Anderson v. Foundation for Advancement, Educ. & Employment of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998). It is well settled that "fairness to the plaintiff[s] and [ ] the sound public policy of deciding cases on their merits" require that district courts "make the threat of th[e] sanction [of dismissal] explicit and clear so that there can be no question . . . as to whether a plaintiff who did not satisfy the conditions understood that, by not satisfying them, he faced prejudicial dismissal." Choice Hotels Int'l v. Goodwin & Boone, 11 F.3d 469, 473 (4th Cir. 1993) (internal quotation marks omitted) (emphasis added); see also Hathcock, 53 F.3d at 40 (explaining that the litigant "`is entitled to be made aware of th[e] drastic consequence[s] of failing to meet the court's conditions at the time the

28

conditions are imposed, when he still has the opportunity to satisfy the conditions and avoid' the sanction.") (quoting Choice Hotels, 11 F.3d at 473). Simply stated, the law requires that prior to any dismissal the offending party be sufficiently warned of the possibility of dismissal and be given a reasonable opportunity to avoid the sanction.

In concluding that "clear" warnings were given, the majority relies upon three events. In my opinion, however, these incidents fall woefully short of supporting the conclusion that the district court's dismissal was preceded by explicit and clear warnings that dismissal would be entered if plaintiffs failed to file supplemental responses to defendant's discovery by a specific date or otherwise failed to comply with some specific condition of the court.

The majority first relies upon the magistrate judge's August 22 order denying plaintiffs' motion to compel, characterizing it as an "express[ ] warn[ing] [to plaintiffs] early in the parties' litigation that further discovery abuse would result in the dismissal of their actions." Majority op. at 10. This August 22 order provides no warning of possible dismissal -- it does not even mention the word. Rather, in this 3-page order (issued without benefit of a hearing), the magistrate judge stated that:

> The purpose of Local Rule 104.8 is to have counsel mutually attempt to resolve their differences before requiring the Court's intercession. The Rule works to save considerable judicial time. No party should be allowed to thwart the purposes of the rule or to ignore the time requirements imposed by the Rule.

J.A. 47. Hardly a clear warning that dismissal was a possibility, the order at best notified plaintiffs' counsel that the 20-day rule for filing motions to compel would be strictly enforced. There is no indication plaintiffs' counsel made the mistake a second time, although in my view defendant's November 14 motion to compel ran afoul of it. Perhaps most importantly, neither the magistrate nor the district judge relied upon this as a warning of impending dismissal.

The majority next relies upon the magistrate judge's two-page Rule to Show Cause, also issued without benefit of a hearing, which reads

29

as follows: "Plaintiff is instructed that her failure to timely comply with this Show Cause Order and show good cause why she failed to reasonably respond to discovery requests may result in her action being dismissed with prejudice." J.A. 76.**8** Plaintiffs' counsel timely responded to the Rule, and the magistrate judge issued no order predicated upon it, ultimately ruling at a November 18 hearing that the motion to compel prompting the Rule was moot. Obviously the court felt, at least at the time, that no further action was justified. Thus, I do not understand how this Rule can be an explicit and clear warning that failure to satisfy a specific condition of the court would lead to prejudicial dismissal. See Choice Hotels, 11 F.3d at 473. It was a warning, but hardly issued in a way that would alert plaintiffs that dismissal might be issued as the first sanction whenever, in the future, the magistrate judge decided to recommend it.

Finally, the majority relies upon statements purportedly made during the November 18 hearing before the magistrate judge. However, the record does not indicate that plaintiffs' counsel was warned that dismissal was imminent at that time. With no hearing transcript or written order to inform us, there is no way to ascertain exactly what was conveyed to the parties. According to the report of the magistrate judge, however, "the parties were put on notice that further character attacks by or upon counsel for either party would not be tolerated." J.A. 209. Thus, he does not state that plaintiffs' counsel was warned that dismissal of the lawsuits loomed on the horizon. Significantly, the district judge relied upon no statements made during the hearing as a basis upon which to find that plaintiffs' counsel had been clearly and explicitly warned that dismissal was imminent. **9**

_____

**8** Although the magistrate judge referenced plaintiffs' violation of Local Rule 104.8 in a footnote to his Rule to Show Cause, the Rule is the first and only place that dismissal is mentioned.

**9** Defense counsel asserts that the magistrate judge "advised [p]laintiffs that the Court's Show Cause Order `meant what it said' with respect to objections, and [that] [p]laintiffs were ordered to submit discovery responses to [d]efendant without objections, with the exception of objections based on attorney work product or attorney-client privilege." Brief of Appellee at 6. In support of this quote it attributes to the magistrate judge, defense counsel refers us to a docket entry which merely tells us that a marginal order was entered "granting in part [and] denying in part

30

Thus, I disagree with the majority's conclusion that these warnings were of sufficient clarity to warrant dismissal with prejudice. Nowhere did the magistrate judge make the threat of dismissal so explicit and clear as to leave "no question" that plaintiffs' counsel, much less the plaintiffs themselves, understood that the plaintiffs "faced prejudicial dismissal" for failing to satisfy a specific condition of the court.

I also disagree with the majority's conclusion that these purported warnings justify the presumption by the lower court, endorsed by the majority, that a lesser sanction would have been futile. This court has "encouraged trial courts initially to consider imposing sanctions less severe" than dismissal or default. Hathcock , 53 F.3d at 41. Compare Mutual Federal, 872 F.2d at 93-94 (upholding default judgment where less severe sanctions had little, if any, impact on defendant's conduct, and defendant failed to comply with orders compelling discovery after being specifically threatened with contempt and warned that continued noncompliance could result in default), with Hathcock, 53 F.3d at 40-41 (vacating default judgment where plaintiff had some knowledge of unproduced material and the district court had issued no prior sanctions or warnings of default).

In this case the district court did not oversee discovery, yet its first discovery order granted defendant's motion to dismiss plaintiffs' complaints for alleged discovery abuse. Without ever conducting a single hearing, the district court did so based upon unclear and non-specific admonitions by the magistrate judge and relied upon those same admonitions to, in effect, disregard the required consideration of lesser sanctions. In my view, this was an abuse of discretion.

_____

[the] motion of defendant to Compel plaintiffs Zornes and D'Amico to fully respond to discovery requests." J.A. 7. It provides us with no support for the purported "warning" by the magistrate judge.

Defense counsel's assertion is unusual, given his concurrent attacks upon plaintiffs' counsel for her attempt to supplement the joint appendix before us. Under defense counsel's view of the rules, plaintiffs' counsel should be barred from arguing anything not contained in the joint appendix, even if it is in the district court record, while he is allowed to make representations not backed up in either place.

<u>Whose Bad Faith?</u>

I next address the district court's conclusion that the plaintiffs acted in bad faith because they failed to meet two discovery deadlines and asserted objections to defendant's discovery requests in their initial responses. First, I believe the objections are unfairly characterized as a direct violation of the Rule to Show Cause. As an initial premise, the Rule was not an order granting the motion to compel responses by a specific date, nor an order imposing sanctions. Rather, the Rule directed counsel to advise the court why discovery responses had not been served and to demonstrate "why an [o]rder should <u>not</u> be passed" imposing sanctions. J.A. 75 (emphasis added).**10** Thus, I am extremely reluctant to view this footnote in the Rule as being an "order" that plaintiffs had waived all objections to defendant's discovery requests.**11** Furthermore, plaintiffs' counsel's response to the Rule obviously satisfied the magistrate judge because he issued no follow-up order and later ruled that all objections had not been waived by the plaintiff. I am also troubled because there is no reference in the record to any violation of the Rule until the magistrate judge issued his recommendation for dismissal over nine months later.**12** In summary, I am

_____

**10** By definition, a Show Cause Order directs "a person or corporation, on motion of opposing party, to appear in court and explain why the court should not take a proposed action. If the person or corporation fails to appear or to give sufficient reasons why the court should take no action, the court will take the action." Black's Law Dictionary 1379-80 (6th ed. 1990).

**11** Although not referenced in the Rule to Show Cause, the majority relies upon Rule 33(b)(4), which states that "[a]ny ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown." Fed.R.Civ.P. 33(b)(4). In my view, Rule 33(b)(4) is consistent with my belief that the footnote could have been interpreted as notice that objections would be deemed waived if good cause was not shown. Any other reading, I believe, requires a presumption that the magistrate judge had <u>already</u> found an absence of good cause -- which would seem inappropriate since plaintiffs' response to the motion to compel was not yet due.

**12** The majority has refused to accept the September 23 responses from the plaintiffs as supplemental material on appeal, or even to consider plaintiffs' argument that they had not waived objections. Because they are the subject of the Rule 37(d) dismissal, I would accept them.

unable to discern a clear meaning from the footnote and cannot vote to deprive the plaintiffs of a decision on the merits because their counsel ran afoul of the magistrate judge's later clarification -- particularly given the high standard for imposing dismissal as a sanction.

I am also unprepared to accept the district court's finding of bad faith because "[p]laintiffs have requested multiple eleventh hour extensions and have continually disregarded discovery deadlines." J. A. 253. The contribution of defense counsel to the discovery problem below cements my opinion. From January to August of 1996, these cases were the subject of mutual neglect on the part of counsel for both parties. The requests at issue were not served by defense counsel until August 9, and without the mutual consent to a 30-day extension of discovery, defense counsel would have had no time to conduct any additional discovery. Initial responses were served on September 16, objections ruled upon on November 18, and the requests were <u>fully</u> responded to on December 20. In terms of specific deadlines, plaintiffs' counsel missed the original September 9 deadline by 14 days, and the agreed-upon December 12 deadline by 8 days. **13** Thus, I am loath to conclude that plaintiffs' counsel requested (as found by the district court) or was afforded (as the majority seems to indicate) "multiple eleventh hour extensions" as that term has been understood in previous cases. On the contrary, plaintiffs' counsel has been consistently held to and punished for missing deadlines, not extensions of deadlines.

In support of the district judge's dismissal, the majority also states that "the magistrate judge made findings, adopted by the district court, that [plaintiffs] made affirmative misrepresentations to the magistrate judge" in their response to the Rule to Show Cause. Majority op. at 13. In my view, this is an overstatement of what the magistrate judge found. I begin with the actual response offered by plaintiffs' counsel to the Rule to Show Cause, filed two weeks after the initial responses were due and concurrently with those responses:

_____

**13** It should not escape notice that defendant also served a supplemental response to plaintiffs' discovery requests nineteen days beyond the proposed December 12 exchange date.

33

> The Plaintiffs are hard-working people with very little education. Their desire to answer the discovery in as complete a manner as possible was an overwhelming and daunting task. For example, Plaintiffs' counsel learned that the Plaintiffs were laboriously trying to answer the "Instructions" section of the Interrogatories.

J.A. 77. In support of his motion to dismiss, filed months after this response was offered, defense counsel argued that he had since had the opportunity to ask <u>both</u> plaintiffs about this assertion and that D'Amico "categorically denied that anything of the sort occurred, and further testified that Ms. Zornes did not appear to have a problem understanding the discovery requests at issue." (Defendant's Motion to Dismiss at 2).

In my opinion, this entire issue arose as a result of defense counsel's mis-characterization of the testimony below. What actually happened is as follows. D'Amico testified that the discovery requests were confusing and that some of the questions were overwhelming for her. When asked specifically about the "example" given in the Show Cause response, D'Amico denied an attempt on her part to "answer" the instructions, but would not presume to speak on Zornes' behalf.[14]

---

[14] When questioned about the second sentence of the response, D'Amico testified as follows:

> Q. Did you at any point, try to answer the instruction in the document?
>
> A. No, I -- to tell you the truth, lot of this, it's a lot -- it's very confusing, because -- it's just very confusing.
>
> . . .
>
> Q. As you were answering the interrogatories did any of the questions seem difficult to answer or unclear to you?
>
> A. Yeah.
>
> . . .
>
> Q. Which part of answering the Interrogatories was overwhelming to you?
>
> A. Just some of the questions were.

34

In support of his motion to dismiss, defense counsel transformed this testimony into a representation that D'Amico had "categorically denied" the earlier response on behalf of herself and Zornes. And while he represented to the court that he had asked both plaintiffs about the response, he offered no citation to Zornes' testimony on the issue.[15] In his report and recommendation, issued more than nine

---

Q. Now, it says here, that Plaintiffs were "laboriously" trying to answer the "Instructions" of the Interrogatories, that's not true, is it?

A. For me it wasn't.

Q. Then based on your observations of Ms. Zornes, that's not true either?

A. I can't make an observation for Donna.

. . .

Q. Did she ever express any concern to you about anything in the instructions portion of the interrogatories?

A. No.

. . .

Q. So based on your personal knowledge, this statement is untrue; is that correct?

. . .

A. For me.

Q. For you, that's not true, is it?

A. Right.

J.A. at 229-236.

[15] There are no excerpts from Zornes' deposition in the record. In an earlier attempt to refute the magistrate judge's finding (in the Rule) that any prejudice to defendant was a result of its own neglect in pursuing discovery, defense counsel represented that Zornes was deposed in April (prior to the Rule or plaintiffs' response to the Rule). He now argues that he questioned both plaintiffs about the Show Cause response, which was not filed until late September, and learned that the response was untrue. Once again, the issue is, in my opinion, too unclear to serve as any reliable basis for the entry of dismissal as a sanction, particularly as against Zornes.

35

months after plaintiffs' counsel filed the actual response to the Rule, the magistrate judge stated that the response was "questionable," J.A. 211, but did not go to far as to characterize it as an "affirmative misrepresentation" by both plaintiffs. The district judge did not mention the issue -- perhaps because it only involved D'Amico's testimony or perhaps because the entire issue was too "questionable" a basis upon which to throw both plaintiffs out of court.

In summary, I believe the record fails to support the majority's conclusion that the magistrate judge made a "finding" that plaintiffs' counsel's response to the Rule to Show Cause amounted to an "affirmative misrepresentation" by D'Amico and Zornes. Even if I were inclined to place any emphasis upon the response, deemed "questionable" by the magistrate judge, I cannot attribute it to plaintiffs, only to plaintiffs' counsel, and Zornes has been punished despite the fact that she had nothing to do with either the Show Cause response or the testimony of D'Amico.

Perhaps what is most troubling to me is that any errors of plaintiffs' counsel have never resulted in the imposition of sanctions when committed. Rather, the first sanction ever imposed was the dismissal of her clients' lawsuits. Although a litigant generally chooses counsel at its peril, see Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962), "`justice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings.'" Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953 (4th Cir. 1987) (quoting United States v. Moradi, 673 F.2d 725, 728 (4th Cir. 1982)); see also United States v. Shaffer Equip. Co., 11 F.3d 450, 462 (4th Cir. 1993) (recognizing, in a similar context, the "strong policy that cases be decided on the merits" and that imposition of a dismissal sanction should include consideration of "the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney" because "we seldom dismiss claims against blameless clients").

In Lolatchy, the court reversed the sanction of default imposed upon the defendants because:

> the defendants [were] blameless. There ha[d] been no prejudice to the plaintiff [because the discovery had been fully

36

answered before the hearing on the default motion]. Any dilatory action was on the part of the attorney, not the defendants, it was not drawn out, and continued at the most for a time span of only a few months. No sanctions short of default were attempted by the district court. The only sanction it ever imposed was default as to liability.

Id. at 953. Although recognizing that opposing counsel's frustration in preparing for trial "may be a sufficient reason for sanctions short of default judgment," the court held that it "should not suffice as a reason for depriving the [litigants] of their day in court." Id. at 954. Rather, a more appropriate sanction would have been to charge the attorney "with all costs and expenses attendant to the delay, including attorneys' fees, or even . . . contempt of court." Id. at 953.

Similarly, no sanction short of dismissal was ever attempted in this case. The entire discovery dispute over the completeness of plaintiffs' responses lasted less than four months, and it is undisputed that complete responses were in fact served within days of defendant's motion to dismiss and months in advance of the dismissal order. These facts, coupled with my adherence to the strong policy of deciding cases on the merits, lead me to conclude that dismissal was too harsh a sanction given the insufficient evidence of bad faith on the part of Zornes or D'Amico.

What Prejudice to Defendant?

It is well settled that the sanction of dismissal should also be reserved for cases "in which it is demonstrated that the failure to produce materially affect[s] the substantial rights of the adverse party and is prejudicial to the presentation of his case ." Wilson, 561 F.2d at 504 (footnotes and internal quotation marks omitted) (alteration in original) (emphasis added). And, even where the "failure to produce results in the discovering party's case being jeopardized or prejudiced, it is the normal rule that the proper sanction must be no more severe . . . than is necessary to prevent prejudice to the movant." Id. (internal quotation marks omitted) (alteration in original). The district court "must consider how the absence of such evidence [not produced] would impair [the other party's] ability to establish their case and whether the non-complying party's conduct [in not producing

37

documents] would deprive [the other party] of a fair trial." Id. at 505 (internal quotation marks omitted) (alterations in original). Furthermore, "when granting such sanction, [the district court] should clearly state its reasons so that meaningful review may be had on appeal." Id. (internal quotation marks omitted).

In my opinion, the district court abused its discretion in finding that defendant was significantly prejudiced by plaintiffs' delay in producing the journal which "Plaintiff D'Amico had previously denied existed" during her deposition. J.A. 255. Defense counsel is more critical -- representing to this court that D'Amico committed perjury by flatly denying the journal's existence. And, the majority has rejected plaintiffs' attempt to supplement the transcript of record with additional excerpts from D'Amico's deposition, which reveal that she in fact disclosed the existence of the journal over two months before defense counsel filed his motion to dismiss. Unlike the majority, I am unprepared to place the brand of "perjury" upon D'Amico, or to rely upon it to dismiss Zornes' complaint. Moreover, I fail to find sufficient support for the conclusion that defendant was materially prejudiced by plaintiffs' production of the journal on December 20.

First, too much has been made in this appeal of D'Amico's alleged "perjury" at her deposition. This is what happened. D'Amico's deposition began on October 1, at which time she denied keeping a journal of workplace concerns.[16] However, the deposition was continued the

_____

[16] During her first day of testimony, D'Amico testified as follows:

> Q. Did you review the notebook you've been keeping in this litigation?
>
> A. What notebook.
>
> Q. Let's start another way, have you been keeping any kind of notebook to record any of your concerns, about the workplace?
>
> A. No.
>
> Q. Did you bring a note pad at all to work to write down any of your concerns?
>
> A. No.

38

following day, and D'Amico volunteered that she was keeping an "incident journal" at her home.**17** It is as simple as that, and I am unwill-

_____

> Q. Does Ms. Zornes do that?
>
> A. No.
>
> . . .
>
> Q. To your knowledge, does Ms. Zornes keep a notebook?
>
> A. I don't know.
>
> Q. Have you ever seen her keep a notebook?
>
> A. No, I haven't.
>
> Q. Have you ever seen her write anything down during the work-day?
>
> A. No.
>
> . . .
>
> Q. Outside of the work-place, have you maintained any kind of notebook or journal?
>
> A. No.
>
> Q. Outside of the work-place, do you know if Ms. Zornes keeps any kind of notebook?
>
> A. No, I don't know.

J.A. 147-49.

**17** On her second day of testimony, D'Amico testified as follows:

> Q. You and I discussed yesterday, some occasions when you spoke with management to discuss your concerns?
>
> A. Yes.
>
> Q. I'm just trying to learn whether there are other occasions that you might have done so, that were not described yesterday?
>
> A. I think we touched base with everything.
>
> Q. We did, you're confident of that?
>
> A. So far as I know, yes.

39

ing to find either perjury or prejudice to the defendant from a situation such as this.

After D'Amico's deposition, plaintiffs' counsel resisted production of the journal on the basis that it was protected by the attorney-client and work-product privileges. On November 14, defense counsel filed a motion to compel plaintiffs to withdraw their objections to produc-

_____

Q. Are there any documents that would refresh your recollection to make sure that we did in fact discuss everything?

A. Yeah, I do have an incident journal that I do keep of things that does happen.

Q. You do keep a journal?

A. Yes, I did.

Q. Yesterday you told me you didn't; is that correct.

A. Right.

Q. What has happened in the past 24 hours to enabled you to recall something that you specifically told under oath yesterday that you did not have?

A. It's not that I don't have it, it's just than I -- you kept asking me if I kept it at work. If I wrote in it at work and it's not really a whole lot of paper. All it is just certain dates where something went down and I wrote notes.

. . .

Q. Did you have something to hide yesterday?

A. No, I don't have nothing to hide. You kept asking about a "journal" and this and that, and to me it's not a "journal" all it is is an incident report, where some things set things in my mind because this is drawing on so long.

. . .

Q. Does Ms. Zornes keep a journal of incidents like you do?

A. Yes.

Continued Deposition of Shirley D'Amico taken October 2, 1996 at 225-30. It is this testimony that the majority has refused to accept as supplemental material to the record on appeal.

40

ing the journal, arguing in part that the Rule to Show Cause barred all objections and, in part, that D'Amico had waived work-product and attorney-client privileges by discussing the journal during the second day of her deposition, October 2.[18] Thus, the magistrate judge, who was overseeing discovery and had been made aware of D'Amico's testimony disclosing the journal's existence, makes no mention in his report and recommendation of a previous denial by D'Amico. He knew the truth about what had happened during D'Amico's deposition, but mistakenly believed that plaintiffs had withheld complete responses to discovery for ten months.

Plaintiffs thereafter filed their objections to the report and recommendation, but had no reason to address D'Amico's deposition testimony because the magistrate judge had not relied upon it in any way in his reasoning. Defense counsel, in response to plaintiffs' objections, attached copies of <u>only</u> the October 1 deposition testimony of D'Amico and represented to the district court that she had "previously deni[ed]" its existence. The district judge, who had not been involved in the details of the earlier discovery dispute and who held no hearing on the motion to dismiss, ruled as follows:

> The Plaintiffs in the instant case correctly point out that [the magistrate judge] incorrectly stated that the Plaintiffs prevented the Defendant from preparing an adequate defense to Plaintiffs' case for ten months by Plaintiffs' tardiness in answering interrogatories properly. These interrogatories were not served until August 9, 1996, and were finally answered properly on December 20, 1996, one week after the final deadline for the second supplemental answers. This delay, through clearly not ten months, did prejudice the Defendant, as the overdue discovery included a one hundred page journal entry which Plaintiff D'Amico had previously denied existed. Untimely receipt of such a document just ten days before the December 31, 1996, discovery deadline prejudiced the Defendant substantially.

---

[18] Thus, the October 2 deposition excerpts which plaintiffs have attempted to submit to this court, contrary to the majority's belief, were not attached to a "wholly unrelated November 14, 1996 document filed with the district court." Majority op. at 15.

J.A. 255 (citations and internal quotation marks omitted). I note first that the district court's entire reference to D'Amico's testimony concerning the journal is contained within his finding that defendant was prejudiced by a 3-1/2 month delay in the production of the journal "which D'Amico had previously denied existed." J.A. 255. It is obvious that the district court incorrectly believed that defense counsel had no prior knowledge of the journal and that plaintiff simply withheld the document until ten days before the existing discovery deadline -- a belief which had been artfully perpetrated by defense counsel despite the lack of any such finding by the magistrate judge who, of course, knew better. The district judge also ruled that the journal's contents prejudiced the defendant, but there is no indication that the journal was placed before the magistrate judge or district judge for their evaluation[19] and the district judge provided no explanation as to why a lesser sanction would not suffice to "prevent prejudice to the movant." Wilson, 561 F.2d at 504.

Perhaps D'Amico did improperly deny the existence of a journal on the first day of her deposition, although I can equally speculate that she was confused by the questions or misunderstood them. She may have believed the journal was privileged -- defense counsel did, after all, argue that the plaintiffs' claims of privilege in the journal were waived by D'Amico's discussing the journal on the second day of her deposition. The crucial fact, of course, is that she disclosed the existence of her written record the next day during the same deposition. And even if the testimony was sufficient to support a finding of "perjury" on the part of D'Amico, Zornes has once again been punished for testimony that she had nothing to do with and over which she had no control.

Equally troubling to me is the fact that defense counsel knew a

_____

[19] In fact, the exact nature of the journal is entirely unclear to me. The magistrate judge did not mention it, the district court calls it a "journal entry," J.A. 255, the majority terms it a "diary," majority op. at 14, and the defendant makes reference to "journals," Brief of Appellee at 29. I find it extremely difficult to conclude that the prejudicial effect of this document (or documents) was carefully considered below, as all indications are that it was not reviewed by the magistrate judge or district judge.

journal existed on October 2, yet led the district court to believe that D'Amico had only denied the existence of the journal and that defendant first became aware of it on December 20. He also made the following representation to this court:

> [T]he production of a document as vital as Plaintiffs' journals eight days after the final deadline . . . is extraordinarily prejudicial to Defendant's defense of Plaintiffs' lawsuit, <u>especially in light of Plaintiff D'Amico's prior testimony under oath that neither she nor Plaintiff Zornes maintained a journal</u>. Obviously, had D'Amico not perjured herself at her deposition, Defendant could have explored the contents of Plaintiffs' journals with her at that time. Additionally, Defendant could have formulated an appropriate discovery strategy in response to the contents of those voluminous journals. Indeed, had the journals been produced on September 9, 1996 as required, Defendant would have had almost four months to conduct the discovery it deemed appropriate in response to those journals.

Brief of Appellee at 29 (emphasis added). This representation, of course, was made to this court prior to the plaintiffs' request to supplement the record with D'Amico's October 2 testimony. Clearly misleading, in my view, it obviously necessitated the plaintiff's efforts to get the entire story before this court.[20]

_____

[20] The majority denies plaintiffs' motion to supplement the transcript of record to show the second day of the deposition testimony and thereby strikes plaintiffs' attempt to refute the "perjury" allegations because plaintiff did not raise the issue until after defense counsel filed its brief to this court. There is, in my opinion, an obvious reason for the delay. As noted above, the magistrate judge made no mention of the issue and the district court's reference to a "previous denial" amounted to 7 words in a 27-page order which dismissed <u>both</u> plaintiffs' complaints and issued Rule 11 sanctions against their attorney. No doubt aware of the weaknesses in his case, particularly the absence of any fault on the part of D'Amico or Zornes, defense counsel made an unfortunately successful attempt to transform this issue into a major one involving perjury by an individual plaintiff. Representations to the lower court of a "previous denial," a half-truth at best, culminated in an obvious attempt to mislead

With the benefit of the additional deposition testimony, we know that D'Amico unquestionably disclosed during her deposition that she had recorded and kept a journal of workplace incidents. We also know that defense counsel asserted, at the conclusion of the deposition, a right to continue the deposition if necessary, but never sought to do so. Defense counsel also made no motion to compel until November 14. The record does not tell us exactly how production of the journal came about, but it appears that counsel, with the magistrate judge's assistance, reached an agreement during the November 18 hearing as to what additional documents would be produced to the other side -- which included the journal. Thus, despite the fact that the magistrate judge had imposed no deadline for the production of documents and defense counsel agreed to a December 12 exchange date, defense counsel asserts irreparable prejudice because the journal was not produced until December 20.

Rendering these claims of prejudice even more suspect is the fact that, while defense counsel claims the journal was so critical that it

_____

this court into believing that D'Amico not only perjured herself in her deposition on this issue, but also that defense counsel had absolutely no knowledge that a journal even existed until it was produced on December 20.

Hence, it is clear to me that it was not until receipt of defendant's brief to this court wherein the defendant branded D'Amico's testimony as perjury that plaintiffs' counsel realized a most serious misrepresentation was being made which would require a supplementation to the transcript of record before this court for us to know what all of the testimony revealed. Perhaps plaintiffs' counsel should have anticipated the issue and covered it as an initial matter, but I can likewise reasonably conclude that she, as most people would, presumed that no effort would be made to mislead this court.

Thus, while I am sympathetic to the district court, which was apparently provided with less than thorough memoranda and subjected to the improper assertions of defense counsel, I believe that candor to this court must not be defined by the contents of the joint appendix, particularly in cases involving the severe sanction of dismissal or default. The information is so important that I cannot understand how the majority can use the testimony from the first day to condemn D'Amico and then forbid consideration of the next day's testimony during which D'Amico plainly told defense counsel about the notes she had made.

44

irreparably prejudiced his ability to defend the cases, and the majority concludes that the late production "effectively prevented [defendant] from pursuing any further discovery," majority op. at 17, defense counsel chose to file a motion to dismiss under Rule 37(d) without any attempt to reopen D'Amico's deposition to explore the contents of her journal or to depose Zornes on the contents of the journal D'Amico claimed that Zornes kept, even though the existing discovery deadline would not pass until December 31, 1996 and the pre-trial conference would not be held until late March 1997. Nor has defendant at any time contended that the journal, when received, contained any "incidents" which were not already revealed in plaintiffs' initial discovery responses or depositions.

At a minimum, defense counsel had knowledge of the journal in October and ample opportunity to compel its production and explore its contents. See Hathcock, 53 F.3d at 40-41 (reversing entry of default, in part because plaintiffs "possessed at least some [but not full] knowledge of the allegedly discoverable materials [defendant] failed to produce.").[21] These facts, coupled with the lack of explanation as to how late production of the journal, or its contents, actually prejudiced defendant, leaves me unable to conclude that defendant's "ability to establish [its] case" has been impaired or that the late production of the journal has "deprive[d][defendant] of a fair trial." Wilson, 561 F.2d at 505. And even if I were to assume that the late production of the journal was prejudicial, the district court has failed to explain why no lesser sanction could have sufficed to "prevent prejudice to the movant." Id. at 504. In my view, a number of more appropriate options were available.[22]

_____

[21] I also note that, had plaintiffs' counsel not consented to the second extension of discovery, defendant would have had no time to conduct any discovery in response to the journal including, of course, deposing D'Amico in the first instance. Even with the extension, they had 30 days to complete discovery -- not the four months asserted -- and by the time they filed their untimely motion to compel, discovery was over. While plaintiffs' counsel was equally negligent in pursuing the discovery necessary to prepare her clients' cases, defendant's claims of prejudice are, in my view, overstated and sharply diminished by its own conduct.

[22] For example, the district court could have extended discovery to allow defendant to explore the incidents, if any, it had not already been

45

I am also unpersuaded by the premise that the money spent by defense counsel associated with pursuing the discovery responses rises to the level of prejudice warranting dismissal of the complaints. If a monetary sanction had been imposed for plaintiffs' counsel's conduct after she responded to the Rule to Show Cause, I would support the district court's attempt to correct any improper behavior at that time. I would similarly have supported the imposition of such sanctions at the November hearing, along with an appropriate warning. As it stands, however, plaintiffs' discovery obligations were completed by December 20, the only existing court deadline was the January 31 deadline for dispositive motions, and there is no indication that a trial date had been set. Accordingly, any prejudice could have been addressed by imposing costs and fees, and allowing defendant additional time to complete any discovery the journal necessitated.[23]

_____

made aware of through the interrogatory responses and depositions and/or barred plaintiffs from raising or relying upon any incidents contained in the journal which had not already been disclosed. To the extent additional discovery was necessary, the court could have imposed fees and costs associated with it upon plaintiffs or their counsel. In December 1996, there was certainly no time obstacle to this extension of discovery for defendant as the pre-trial conference was not scheduled to be held until March of the following year.

[23] Thus, I am also unpersuaded by the majority's reliance upon Zaczek v. Fauquier County, Va., 764 F.Supp. 1071, 1079 (E.D. Va. 1991), aff'd, 16 F.3d 414 (4th Cir. 1993), and Aerodyne Sys. Eng'g v. Heritage Int'l Bank, 115 F.R.D. 281, 290-91 (D. Md. 1987). In Zaczek, the court dismissed a § 1983 action filed by an unemployed pro se prisoner with "few assets," after the prisoner had filed over fifty motions in eight months despite repeated, and explicit, warnings to stop. In Aerodyne, the district court assumed oversight of the discovery dispute from the magistrate judge when plaintiffs were two months late in responding, sent a letter informing counsel that sanctions would be granted unless responses were received by a certain date, issued a follow-up order requiring an immediate response and imposing monetary sanctions when not received, and held a hearing before ruling that the action would be dismissed unless plaintiff provided full and complete responses by yet another specific date. I do not quarrel with these cases, but find them to be vastly different from this one.

46

<u>Who Has Been Deterred - And From What</u>?

I turn now to the final factor for consideration-- whether the harsh sanction of dismissal was warranted by the need to deter noncompliance with discovery rules and court directives. As a general rule, I embrace and appreciate the majority's deference to the "trial judge's position to supervise the litigants and assess their good faith." <u>Lolatchy</u>, 816 F.2d at 957 (Wilkinson, J., dissenting) (internal quotation marks omitted). I simply do not find the usual degree of deference to be warranted in this case.

Prior to issuing his recommendation for dismissal, the magistrate judge had issued the 3-page order denying plaintiffs' motion to compel without a hearing, and the 2-page Rule to Show Cause without a hearing and without follow-up. The magistrate judge had counsel appear before him on just one occasion -- the November 18 hearing -- which resulted in no sanctions or court-ordered deadlines. And while the magistrate judge chastised <u>both</u> counsel for their unprofessional behavior during the November 18 hearing, he later recommended dismissal without conducting a hearing. The district judge accepted the recommendation, without ever issuing a prior order or holding a hearing. Thus, while I agree that dismissal must be available as a sanction in appropriate cases, this is not such a case. The severity of the sanction demands that it follow a clear and specific warning, the consideration of imposing lesser sanctions in an attempt to steer the course, and a careful consideration of alternative methods to resolve any prejudice.

I also believe the laudable goal of deterrence has not been served. Plaintiffs' counsel has been fined $500 and ordered to pay approximately $3,400 in attorneys' fees to defense counsel for the motion for default she filed in January 1997. She may or may not find this to be a deterrent, but is free to continue practicing law nonetheless. Defense counsel, buoyed by the result in this case, will likely be encouraged to litigate similarly in the future. Plaintiffs, on the other hand, have been forever foreclosed from a decision on the merits.

<u>Conclusion</u>

Having reviewed the entire record in this case, and the factors which must be carefully applied to evaluate the severe sanction of dis-

47

missal, I am regretfully convinced that the district court abused its discretion in dismissing plaintiffs' complaints. Dismissal with prejudice was imposed as the first sanction in this case, and without a "clear and explicit" warning that dismissal would result if plaintiffs failed to comply with a specific order or condition of the court. I believe it is unacceptable to allow courts to rely upon a Rule to Show Cause, issued days after discovery responses were first due and which was timely responded to by the offending party, as a vehicle to dismiss complaints months later. If a sanction was warranted, it should have been imposed within a reasonable time after the response to the Rule was filed and it should have been based on events which prompted the Rule in the first instance. I fear the majority has today eviscerated the purpose behind warnings, for district courts may hereafter threaten dismissal for a minor infraction of timing and forever rely upon that warning to dismiss at will in the future. And, it appears, courts may dispense altogether with the consideration of lesser sanctions as a first attempt to correct the behavior of the litigant's attorneys -- so long as they have threatened dismissal sometime in the past.

The majority has also placed great emphasis upon the district court's findings of bad faith by plaintiffs and undue prejudice to the defendant. Plaintiffs' counsel is not blameless by any means. She certainly joined defense counsel's lack of diligence in preparing these cases for trial and, after being placed under attack by her opposing counsel, reacted by filing an improvident motion for default judgment. However, in my view, the incomplete representations made by defense counsel to the court below and an insufficient transcript of record on appeal have resulted in both the district court and majority being misled, and my conclusion that defense counsel is equally, if not more, to blame for the discovery difficulties below.

Thus, I dissent. In my view, the record before us woefully lacks the clarity and certainty required to impose the harsh sanction of prejudicial dismissal and, instead, reveals a pattern of uncivil and unprofessional behavior on the part of both sides to this controversy. Believing as I do in the strong policy that cases should be decided on the merits, rather than on the cunning of the litigants' counsel in conducting discovery, and that Zornes and D'Amico have suffered an unjust sanc-

48

tion, I would remand to the district court for close supervision of the remaining discovery and a final determination on the merits.

49